IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| ESCAMBIA OPERATING COMPANY, LLC, *et al.*, | § § § § | Case No. 23-50491 JAW |
| Debtors.[1] | § § § | (Jointly Administered) |

### CHAPTER 11 TRUSTEE'S FIRST STATUS REPORT AND STATEMENT OF INVESTIGATION PURSUANT TO 11 U.S.C. § 1106(a)(3)-(4)

Drew McManigle, the duly-appointed chapter 11 trustee (in such capacity, the "**Trustee**"), of the bankruptcy estates of Escambia Operating Company, LLC ("**Escambia Operating**") and Escambia Asset Company, LLC ("**Escambia Asset**" and together with Escambia Operating, the "**Escambia Debtors**" with such bankruptcy estates being the "**Escambia Estates**"),[2] by and through the Trustee's legal counsel Jones Walker LLP ("**Jones Walker**"), hereby files this *First Status Report and Statement of Investigation* (the "**Status Report**") regarding the Escambia Estates pursuant to sections 1106(a)(3)-(4) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"):

### PRELIMINARY STATEMENT

1. Sections 1106(a)(3)-(4) of the Bankruptcy Code require, in pertinent part, that a chapter 11 trustee "shall . . . investigate the acts, conduct, assets, liabilities, and financial condition

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Escambia Operating Company, LLC (2190) and Escambia Asset Company, LLC (2000).

[2] This Status Report attempts to make distinctions where appropriate between Escambia Operating and Escambia Asset. However, because of the sometimes-indiscriminate way prior management and the Debtors' books and records referred to both entities, precision in this regard is not assured.

#101850651v6                                    1

of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case . . . [and] as soon as practicable (A) file a statement of any investigation . . . including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate[.]"

2.  The Trustee has begun the investigation required by section 1106 and has sought to expeditiously stabilize the Escambia Estates.

3.  While the Trustee's investigation and stabilization efforts are in the infant stages and are not complete, the Trustee has already uncovered numerous and serious lapses by prior management of the Escambia Debtors, many of which are identified herein. These lapses collectively reflect operational challenges and administrative oversights that pose risks to both the Escambia Debtors' financial standing and public safety. Accordingly, the Trustee deems it necessary to file this Status Report to provide preliminary information to the Court and other constituencies of the Escambia Estates.

4.  This Status Report does not identify all actions taken by the Trustee to date. The Trustee reserves the right to supplement this Status Report as needed as his investigation and stabilization of the Escambia Estates progress.

**RELEVANT BACKGROUND**

5.  On April 2, 2023 (the "**Petition Date**"), the Escambia Debtors, along with Blue Diamond Energy, Inc. ("**Blue Diamond**"), each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[3]

---

[3] Citations to the record are as follows: citations to docket entries in the above-captioned, jointly administered bankruptcy cases (the "Escambia Debtors' Cases") are cited as "[Docket No. _____]";

6. As has been represented to the Bankruptcy Court (i) Blue Diamond is the parent company of both Escambia Asset and Escambia Operating, and (ii) Thomas Swarek is the principal of Blue Diamond.[4]

7. On October 11, 2023, the Court entered the *Agreed Order Resolving Breitburn Operating LP's Motion for Appointment of a Chapter 11 Trustee* [Blue Diamond Case Docket No. 470] (the "**October 11th Order**") authorizing the Office of the United States Trustee ("**UST**") to appoint a chapter 11 trustee in the Escambia Debtors' Cases.

8. Importantly, the October 11th Order required Mr. Swarek to return certain property to the Trustee and to otherwise cooperate with the Trustee. In particular, the Bankruptcy Court:

> ORDERED that, any assets owed by or titled to the Debtor, Blue Diamond Energy, Inc., that were purchased using funds by Escambia Operating, **shall be deemed to be transferred to and property of the estate of Escambia Operating, without any further action by the Chapter 11 Trustees or the Escambia Debtors** ….
>
> ORDERED that, **Thomas Swarek shall cooperate with the Chapter 11 Trustees to insure that all funds transferred from Escambia Operating and equipment acquired using funds held by Escambia Operating, that was transferred to, is owned by, and/or titled to Thomas Swarek, any affiliate of Thomas Swarek, or any entity that Thomas Swarek otherwise owns or controls, is promptly transferred free and clear of liens and claims to Escambia Operating, with all such funds and equipment being deemed property of the estate of Escambia Operating**.[5]

---

citations to docket entries in the Blue Diamond bankruptcy case (Case No. 23-50490-JAW) (the "Blue Diamond Case") are cited as "[Blue Diamond Case Docket No. _____]".

[4] As explained further below, the Trustee's investigation is in its infancy and thus the Trustee reserves all rights regarding any prior statements by Blue Diamond, the Escambia Debtors, and/or Mr. Swarek and/or those acting on his behalf regarding the status of each entity.

[5] As further explained below, Mr. Swarek provided a sworn declaration on December 8, 2023, describing Mr. Swarek's purported compliance with the mandates from the October 11th Order. This declaration is attached hereto as Exhibit C and is described further below.

9. On October 25, 2023, the UST filed the *United States Trustee's Application for Approval of Chapter 11 Trustee* [Docket No. 138] seeking approval of Drew McManigle as the duly-appointed chapter 11 trustee of the Escambia Estates. That same day, the Court entered the *Order* [Docket No. 139] approving the Trustee's appointment.

## STATUS REPORT

10. Upon his appointment, the Trustee took over control of the Escambia Debtors' twelve (12) operational wells and two (2) processing plants/refineries (the "**Gas Processing Facilities**").[6] The Trustee further took managerial control of Escambia Operating's workforce, composed of approximately thirty-four (34) pre-existing W-2 employees who primarily focus their efforts on plant and well operations. The Trustee, his non-attorney advisors,[7] and (where appropriate) his legal counselors[8] focused on four immediate areas of concern: (i) enhancing deficient health and safety precautions pertaining to Escambia Operating's Gas Processing Facilities, (ii) curing operational deficiencies for purposes of preserving the value of the Escambia Estates, (iii) implementing necessary financial and accounting controls, and (iv) investigating potential claims belonging to the Escambia Estates.

---

[6] The Gas Processing Facilities are referred to separately as the "Flomaton Gas Plant" and the "BEC Refinery." The Alabama Department of Environmental Management ("**ADEM**") refers to the Flomaton Gas Plant as the "Flomaton Fanny Church Plant" and the BEC Refinery as the "Big Escambia Creek Plant."

[7] The Trustee has retained (a) MACCO Restructuring Group, LLC ("**MACCO**") as his financial advisor, *see* Docket No. 186 (Order authorizing retention of MACCO); and (b) MP Boots Petroleum Engineering Services, LLC ("**MP Boots**") as his valuation advisor, *see* Docket No. 185 (Order authorizing retention of MP Boots).

[8] The Trustee has retained Jones Walker as his counsel and legal advisor, *see* Docket No. 184 (Order authorizing retention of Jones Walker).

#101850651v6                                   4

### A. Initial Inspection of Gas Processing Facilities

11. The Trustee immediately focused on any health and safety concerns regarding the Gas Processing Facilities. As has been represented to the Bankruptcy Court, the natural gas that is produced from this area of the country naturally contains hydrogen sulfide gas. Escambia's Gas Processing Facilities were designed to process such gas, but these facilities must be maintained in order to mitigate any potential safety hazards.

12. Upon commencing his investigation of the Gas Processing Facilities, the Trustee became aware of severe safety concerns due to the manner in which the Gas Processing Facilities were maintained while under the operational control of Mr. Swarek. In certain circumstances (especially in matters concerning the health and safety of the Escambia Debtors' employees), the Trustee was forced to immediately address these deficiencies.

13. The actions taken by the Trustee to address maintenance deficiencies and safety concerns at Escambia Debtors' Gas Processing Facilities include:

    a. performing necessary fire inspection;

    b. performing a necessary hydrogen sulfide inspection, including replacing or repairing well head monitors and alarms;

    c. addressing a forward and backward vertical merger and integration strategy, explained to the Trustee and MACCO, by Mr. Swarek during a meeting on November 16, 2024 in Austin, Texas. At this meeting, Mr. Swarek opined he could "save money" by building and equipping a machine shop on the BEC Refinery, utilize foundry equipment components to provide raw materials to the machine shop and finally use "Texas welders" to build or repair pressure vessels at the BEC Refinery. Based on the Trustee's

experience, and in his business judgment, this strategy was grossly negligent and resulted in misappropriation or expenditure of millions of dollars that could and should have been spent on the BEC Refinery and wells to assure safety, production, and maintenance;

    d.    addressing lack of adequate software and maintenance system to operate the Gas Processing Facilities;[9] and

    e.    several additional corrective actions that have been identified by the Escambia Debtors' Area Superintendent and that are described in **Exhibit A**.

14. What is more, the security cameras at the Flomaton Gas Plant were found to be non-functional. Immediate action was taken to address the issue, and the cameras have since been serviced and restored to operational status. This lapse in surveillance posed potential security risks and has been rectified to enhance overall safety measures. The expense associated with resolving the security camera issue was $6,000.00.

15. The Trustee, further, identified a lapse in maintaining comprehensive records of gas purchases necessary to operate the BEC Refinery inasmuch as the BEC field was not providing sufficient gas for this purpose. The Trustee is currently engaged in efforts to enhance the documentation processes to ensure accuracy, transparency, and compliance with operational standards. The estimated costs associated with correcting this deficiency is $688,000.00.

---

[9] The Gas Processing Facilities' maintenance system must identify safety critical equipment and ensure preventative maintenance plans are executed, as well as documenting all corrective work orders. Additionally, the maintenance plan provides visibility to the Escambia Debtors' historical and forecasted operating and capital expenditures. The Trustee continues to identify the lack of critical inventory components to ensure the Gas Processing Facilities remain operational.

16. Notwithstanding these challenges, the Trustee and his non-attorney advisors continue to focus on improving the operations of the Gas Processing Facilities, with a particular focus of operating the Gas Processing Facilities in a safe and commercial manner.

### B. Initial Inspection of Field Operations

17. Also of importance, the Trustee has focused on evaluating Escambia Debtors' field operations. The Trustee has further focused on addressing shortcomings to preserve and maximize value that might be available to pay the Escambia Debtors' creditors and other stakeholders.

18. Overall, the Trustee's initial inspection of field operations has revealed that, under Mr. Swarek's management, Escambia Debtors' production and well maintenance management has been neglected, which has resulted in non-product time and dependency of third-party gas buyback. To remedy the field operations, the Trustee:

   a. immediately executed workover operations for wells: IPC-2-11 increasing production from 200-600 Mcf to 1700-1750 Mcf per day; and

   b. is currently performing workover operations for Booth 36-14 after a material loss in production output. Estimated total investment is $750,000-$1,108,000.

19. Additionally, the Ezell Unit 29-5 had a workover rig, that upon information and belief, is owned and/or operated by Mr. Swarek. The operations were abandoned, with the workover rig left rigged up over the well head with pipe left standing in the derrick and has for all intents and purposes been abandoned on the wellsite with no clear plan of action from Mr. Swarek prior to the appointment of the Trustee. The Trustee believes, based on his significant knowledge of the well servicing industry that this action is highly inappropriate, dangerous and that provisions

#101850651v6

should be made to lay down the pipe standing in the derrick, rig down, and remove the rig from location.

20. Finally, the Escambia Debtors' Production Foreman has recommended that 10 wells' emergency shutdown valves should be replaced in the near future.

21. Notwithstanding these challenges, the Trustee and his non-attorney advisors continue to focus on improving the field operations for purposes of preserving and enhancing value that might be available to pay the Escambia Debtors' creditors and other stakeholders.

C. **Regulatory Lapses Resulting in Fines, Penalties, and Abatements**

22. On November 14, 2023, the Trustee, along with his advisors, spoke with representatives from the Alabama Department of Environmental Management ("**ADEM**") regarding outstanding fines, penalties, and abatements related to the Escambia Estates. Specifically, the ADEM and Mr. Swarek entered into a Consent Order on September 6, 2023, whereby Mr. Swarek, on behalf of the Escambia Estates, agreed to pay a civil penalty in the amount of $40,000.00 for certain violations. The Trustee was successful in negotiating with ADEM to spread such payments over twenty-four (24) months, enabling the Trustee to better manage the Escambia Debtors' cash flow and avoid potential regulatory actions on the part of ADEM.

23. ADEM also informed the Trustee that the Escambia Debtors' were delinquent on certain fees incurred on October 31, 2023, pursuant to Title V of the Clean Air Act in an amount in excess of $300,000.00, with a 3% monthly interest accruing.

24. The Trustee and his legal counsel are in the process of determining how these fines, penalties, and abatements should be handled in the contexts of the Escambia Debtors' Cases.

### D. Additional Safety Concern - Lapse in Vehicle Insurance

25. In addition to the foregoing, to his astonishment, the Trustee recently discovered that Mr. Swarek had allowed insurance coverage on the Escambia Debtors' vehicles to lapse in September. These vehicles were in use daily on public, private, and plant roadways.

26. Steps have been taken to obtain and maintain continuous coverage, addressing potential liabilities and mitigating risks associated with the transportation aspect of operations.

### E. Insufficient Accounting Practices and Record Keeping

27. The Trustee's initial investigation has revealed that the Escambia Debtors' corporate and accounting responsibilities were delegated to a distinct team located in Gulfport, Mississippi who are employed by and also oversee tasks for other entities owned by Mr. Swarek.[10]

28. Effective December 1, 2023, Mr. Swarek's corporate and accounting team have been removed from all bank accounts and are no longer involved in performing those functions.

29. The Trustee and his non-attorney advisors have discovered inadequacies in accounting practices and record keeping processes in connection with the Escambia Debtors. Specific issues include: (1) the termination of various software programs for royalty and joint interest billing ("**JIB**") calculations; (2) manual tracking of Accounts Payable in Excel; and (3) a combination of cash and accrual basis accounting methods leading to financial statement discrepancies.

30. The Trustee and his non-attorney advisors are still in the process of determining the total amount outstanding owed to such working interest owners, royalty owners, and other parties in interest. According to the information provided by various working interest holders, there is at

---

[10] The Trustee and MACCO have interviewed these individuals. Furthermore, Jones Walker is in the process of analyzing prior sworn testimony of certain of these individuals.

least an estimated $3.6 million - $4.5 million in outstanding working interests owed. The Trustee also estimates approximately $400,000.00 in royalty payments that are outstanding. The investigation into these outstanding interests is ongoing.[11]

31. To rectify these issues moving forward, the Trustee has implemented the corrective actions discussed below.

32. Recognizing the need for accurate royalty and JIB calculations, efforts have been initiated to re-implement specialized software for these purposes:

    a. acknowledging the limitations of current practices, there is an active transition plan to migrate from manual Excel tracking to an appropriate accounting software suite; and

    b. this transition aims to streamline and standardize accounting processes, improving accuracy, efficiency, and compliance.

33. In the interim (and while the transition is underway), MACCO will oversee the management of the accounting software to ensure continuity and the smooth functioning of financial operations. This includes vigilant oversight to maintain data integrity and adherence to accounting standards during the transitional phase.

**F. Investigation into Causes of Action Belonging to the Escambia Estates**

34. Upon being retained, the Trustee and his advisors met with a number of stakeholder groups who expressed concerns regarding the manner in which the Escambia Estates were managed under Mr. Swarek's control. The Trustee was also aware of the mandates contained with the October 11th Order that the Trustee understands were negotiated with Mr. Swarek's counsel

---

[11] These estimates are provided for information purposes only and should not be deemed admission by the Trustee. The Trustee reserves all rights regarding the foregoing.

in order to preserve the value of the Escambia Estates. Recognizing the tense relationship between Mr. Swarek, on the one hand, and the Escambia Estates' creditors and stakeholders, on the other, the Trustee directed his counsel to begin analyzing potential claims that might belong to the Escambia Estates, with a focus on narrowing any potential issues prior to litigation in the hopes of minimizing litigation costs.

35. With this strategy in mind, the Trustee sent a letter to Mr. Swarek, by their respective counsels, on December 1, 2023 (such letter being the "**December 1st Letter**") demanding a sworn declaration from Mr. Swarek attesting to his compliance with the October 11th Order. This letter is attached hereto as **Exhibit B**.[12]

36. On December 8, 2023 (after two extension granted by the Trustee through counsel), Mr. Swarek responded by sending a sworn declaration (the "**Swarek Sworn Declaration**") that, in summary, takes the position that certain of the mandates contained in the October 11th Order have been satisfied. The Swarek Sworn Declaration is attached hereto at **Exhibit C**. Notably, the Swarek Sworn Declaration is an admission that all mandates in the October 11th Order have not been satisfied. The Trustee reserves the right to file such pleadings and take such actions as may be necessary to investigate the full scope of Mr. Swarek's non-compliance and to compel his compliance.

---

[12] In addition to addressing the October 11th Order, the December 1st Letter further requested that Mr. Swarek reduce to writing any offer for the purchase of the Escambia Estates' interest in the personal property (the "**Personal Property**") described in the *Joint Motion of Perfection Global LLC and Waupaca Foundry, Inc. for Relief from the Automatic Stay and Abandonment* [Blue Diamond Case Docket No. 455]. Prior to sending the December 1st Letter, Mr. Swarek contacted MACCO and the Trustee on multiple occasions suggesting that a "deal" or "offer" from El Dorado or one of the other Swarek entities could be made concerning the Personal Property. However, as of the filing of this Status Report, Mr. Swarek has failed to make any formal offer for the Personal Property as requested in the December 1st Letter. Moreover, Mr. Swarek has failed to comply with the October 11th Order by not returning the portion of the purchase price for the Personal Property paid for with Escambia Operating funds.

37. As a threshold issue, the Swarek Sworn Declaration confirms that Mr. Swarek was the "person in charge of management" of the Escambia Estates prior to the appointment of the Trustee:

> 5. Prior to entry of the [October 11th Order], and thereafter until the Court entered its Order approving the appointment of Drew McManigle as Chapter 11 Trustee for Escambia Operating Company … and for Escambia Asset Company …, ***I was the Debtor's representative and the person in charge of management of [Escambia Operating] and [Escambia Asset] as Debtors-in-Possession.***[13]

38. This is significant because, as the "person in charge", Mr. Swarek owed fiduciary obligations to the Escambia Debtors' creditors and other stakeholders as of the Petition Date. *See, e.g, Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925 (5th Cir. 1999); *In re Houston Reg'l Sports Network, L.P.*, 505 B.R. 468 (Bankr. S.D. Tex. 2014). The Fifth Circuit has explicitly recognized that "[a] sine qua non in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession … who are responsible for managing the debtor's estate in the best interests of the creditors." *Southmark Corp.*, 163 F.3d at 931. As one bankruptcy judge in this Circuit recently recognized, "[i]t is no surprise that the Fifth Circuit (and every Circuit opinion located by the Court) treats the debtor in possession as a fiduciary." *Houston Reg'l Sports Network, L.P.*, 505 B.R. at 481 (Isgur, J.).

39. Such fiduciary obligations include a duty of loyalty that required Mr. Swarek to avoid situations where he was "self-dealing" with other entities that he owned. *E.g., Miller v. McCown De Leeuw & Co. (In re Brown Sch.)*, 386 B.R. 37, 47 (Bankr. D. Del. 2008) (Walrath, J.). To the extent that Mr. Swarek engaged in self-dealing, it is his burden to demonstrate that these

---

[13] Swarek Sworn Declaration at 1 ¶ 5 (emphasis added).

transactions were "entirely fair" to the Escambia Estates. *Id.* ("For breach of the duty of loyalty claims . . . the plaintiff need only prove that the defendant was on both sides of the transaction. The burden then shifts to the defendant to prove that the transaction was entirely fair. This burden is greater than meeting the business judgment rule inherent in duty of case cases.").

40. By his sworn declaration, Mr. Swarek admits to a number of occasions where he engaged in self-dealing (i.e., instances where Mr. Swarek was on "both sides of the transaction"):

> 7. It is unclear which items of personal property (i.e., oilfield equipment and other business personal property) are property of the [Escambia Operating] Bankruptcy Estate, and which are property of one of my affiliated entities. It is therefore unclear to what extent, if any, that I am not in compliance with the Agreed Order. …
>
> 8. Also unclear is an accounting between [Escambia Operating] and entities owned or controlled by me. There were numerous transfers of funds to and from [Escambia Operating] accounts to and from Swarek Entities, and transfer to Swarek Entities in exchange for goods and services. ….

Swarek Sworn Declaration at 2. Mr. Swarek further admits that it will take "months" to unwind these transactions. *Id.*

41. These recent statements by Mr. Swarek suggest that the Escambia Estates have strong claims against Mr. Swarek for, at minimum, breach of Mr. Swarek's duty of loyalty based on rampant self-dealing. The Trustee continues to assess the value of such claims and is conferring with his legal counsel regarding the prosecution of the same. The Trustee reserves all rights regarding such claims and all other claims the Trustee may have against Mr. Swarek, entities he directly or indirectly owns or controls, and any persons and entities.

42. The Trustee has also uncovered rampant disregard for the bankruptcy process prior to his appointment. Mr. Swarek incurred administrative expense claims for goods and services in

#101850651v6     13

excess of $2,000,000.00[14] that have materially impacted the Trustee's flexibility to correct deficiencies. Specifically, the Escambia Debtors' have been placed on cash on delivery or pay as you go provisions with numerous vendors. This has substantially impacted the Trustee's ability to correct deficiencies as these types of necessary vendors are less common in the area.

      WHEREFORE, the Trustee submits this Status Report.

*[Continues on Next Page]*

---

[14] Since Mr. Swarek purchased the Escambia Debtors, the Trustee has revealed an estimated $11,000,000.00 in expropriation of capital.

Dated: December 11, 2023   Respectfully submitted,

/s/ *Jeffrey R. Barber*
Jeffrey R. Barber (Mississippi Bar No. 1982)
JONES WALKER LLP
3100 North State Street, Suite 300
Jackson, Mississippi 39216
Tel: 601-949-4765
Fax: 601-949-4804
Email: jbarber@joneswalker.com

-and-

Joseph E. Bain (Texas Bar No. 24085187)
*Admitted Pro Hac Vice*
Olivia K. Greenberg (Texas Bar No. 24127683)
*Admitted Pro Hac Vice*
JONES WALKER LLP
811 Main Street, Suite 2900
Houston, Texas 77002
Tel: 713-437-1800
Fax: 713-437-1810
Email: jbain@joneswalker.com
 ogreenberg@joneswalker.com

**Counsel for Drew McManigle, Chapter 11 Trustee of the Estates of Escambia Operating Company, LLC and Escambia Asset Company, LLC**

## CERTIFICATE OF SERVICE

   I certify that on December 11, 2023, I caused a copy of the foregoing document to be served by electronic transmission to all registered CM/ECF users appearing in this case.

                */s/ Jeffrey R. Barber*