## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ESCAMBIA OPERATING COMPANY, | § | |
| LLC, *et al.*, | § | Case No. 23-50491 JAW |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

## CHAPTER 11 TRUSTEE'S *EMERGENCY* MOTION (1) TO ENFORCE AGREED ORDER RESOLVING BREITBURN OPERATING LP'S MOTION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE; (2) FOR CONTEMPT; (3) FOR JUDICIAL SANCTIONS; (4) FOR INJUNCTIVE RELIEF; (5) FOR *EXPEDITED CONSIDERATION*; AND (6) RELATED RELIEF

The duly-appointed chapter 11 trustee, Drew McManigle (the "**Trustee**"),[2] of the Escambia Debtors' estates (together, the "**Escambia Estates**"), submits this emergency motion (this "**Motion**"), for entry of an order: (1) enforcing the October 11, 2023 *Agreed Order Resolving Breitburn Operating LP's Motion for Appointment of a Chapter 11 Trustee* [Blue Diamond Docket No. 470][3] (the "**Agreed Order**"); (2) holding Thomas Swarek ("**Swarek**") in contempt;

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Escambia Operating Company, LLC (2190) ("**Escambia Operating**") and Escambia Asset Company, LLC (2000) ("**Escambia Asset**" and together with Escambia Operating, the "**Escambia Debtors**").

[2] On October 25, 2023, the Court entered the *Order* appointing the Trustee. [*See* Escambia Docket No. 139].

[3] Citations to the record are as follows: citations to the jointly-administered bankruptcy cases of the Escambia Debtors (Case No. 23-50491-JAW) (the "**Escambia Debtors' Cases**") are cited as "[Escambia Docket No. ____]"; citations to docket entries in the Blue Diamond Energy, Inc. ("**Blue Diamond**") bankruptcy case (Case No. 23-50490-JAW) (the "**Blue Diamond Case**") are cited as "[Blue Diamond Docket No. ____]"; citations to docket entries in the Escambia Asset bankruptcy case (Case No. 23-50492-JAW) (the "**Escambia Asset Case**") are cited as "[Escambia Asset Docket No. ____]"; citations to docket entries in the Hugoton Operating Company, Inc. ("**Hugoton**") bankruptcy case (Case No. 23-51139-JAW) (the "**Hugoton Case**") are cited as "[Hugoton Docket No. ____]"; and citations to docket entries in the El Dorado Gas & Oil, Inc.

(3) awarding sanctions against Swarek; (4) granting mandatory and prohibitory injunctive relief; (5) for expedited consideration; and (6) any related relief for which the Trustee is entitled. In support of the Motion, the Trustee respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105 and 542 of 11 U.S.C. § 101, *et seq*, of the United States Code (the "**Bankruptcy Code**"). This matter is governed procedurally by Rules 7001 and 7070 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## PRELIMINARY STATEMENT

3.      As the Trustee explained in the *Chapter 11 Trustee's First Status Report and Statement of Investigation Pursuant to 11 U.S.C. § 1106(a)(3)-(4)* [Escambia Docket No. 193] (the "**Trustee's Report**"), his investigation and stabilization efforts are ongoing, but they are not complete. In part, the Trustee's investigation and stabilization efforts have been frustrated by the failure of Swarek to fully abide by the Agreed Order and, in fact, to actively violate it. Swarek's failure to do what this Court has ordered—and which he agreed to as representative of the Escambia Debtors and other entities he owns or controls — and what the Bankruptcy Code requires presents additional challenges to the Trustee that pose risks to the Escambia Estates.

---

("**El Dorado**") bankruptcy case (Case No. 23-51715-JAW) (the "**El Dorado Case**") are cited as "[El Dorado Docket No. ____]".

#101903668v19

4.      The Trustee has discovered numerous inter-company transfers made both before and during the Escambia Debtors' Cases that must be untangled (to the extent possible) for the benefit of all creditors.[4] The Trustee also believes that there is much more to uncover. Consequently, the Trustee requires the Court's intervention to enforce the Agreed Order so that the Trustee can complete his investigation with all books, records, and assets of the Escambia Estates.

5.      Even more pressing, the Trustee has received reports from various sources that Swarek is in the process of moving and/or selling certain assets, some of which may belong to the Escambia Estates. These reports put the Trustee (and other parties in interest) in an untenable position—being forced to choose between ignoring such reports, on the one hand, or expending resources to build a record against Swarek. As it relates to Swarek's obligations to the Trustee, however, the Court could not have been clearer in ordering Swarek—through the mutually negotiated Agreed Order—to "cooperate with the Chapter 11 Trustee" to ensure that various funds and equipment are returned to the Escambia Estates.

6.      These reports received by the Trustee demonstrate, at bottom, a lack of cooperation on the part of Swarek. Indeed, Swarek continues to create an environment where it is next-to-impossible for the Trustee (or any other party in interest) to advance the goals and purposes of the Bankruptcy Code.

---

[4] Because of these transfers, the Trustee may have certain overlapping and disputed claims with First Service Bank ("**FSB**") in the Hugoton Case and El Dorado Case and in connection with certain non-debtor affiliates of Swarek. For clarity, however, this Motion does not seek relief against FSB. The Escambia Trustee and FSB continue to dialogue on ways to preserve any claims and disputes for later adjudication or settlement once the various matters involving Swarek have been investigated. Counsel for the Trustee intends to work with FSB's counsel so as to preserve the rights of FSB and the Escambia Estates.

#101903668v19

7.      Against this background, the Trustee respectfully requests that the Court enforce the Agreed Order by holding Swarek in contempt, issuing sanctions, awarding damages as set forth herein, issuing injunctive relief, and granting any other related relief in which the Trustee is entitled under the law.

8.      Given the nature of the relief sought herein (and the existence of this Court's already-entered Agreed Order), the Trustee respectfully submits that immediate intervention by the Court is required. It is not clear whether Mr. Sheehan represents Swarek in Swarek's personal capacity.[5] Even still, the Trustee will attempt to work with Mr. Sheehan regarding the timing of a potential setting for this Motion. However, Swarek's lack of compliance with the Agreed Order continues to create issues for the administration of the Escambia Estates and any further delay could result in additional loss to the Escambia Estates.

## FACTUAL BACKGROUND

### A.      Background Overview

9.      On October 11, 2023, the Court entered the Agreed Order authorizing the United States Trustee (the "**U.S. Trustee**") to appoint a chapter 11 trustee in the Escambia Debtors' Cases and withdrawing, without prejudice, the request to appoint a chapter 11 trustee in the Blue Diamond Case.

10.      The Agreed Order contains certain agreed-to concessions on the part of Swarek to avoid a trial on *Breitburn Operating LP's Motion for Appointment of a Chapter 11 Trustee* [Blue Diamond Docket No. 107]. Notably, the Agreed Order provides the basis to appoint the Trustee and orders the following:

---

[5] *See* 11 U.S.C. §§ 101(14) and 327(a) (professionals employed in a bankruptcy case may "not hold or represent an interest adverse to the estate").

ORDERED that, the Escambia Debtors' management, employees and professionals shall cooperate in transitioning operation of the Escambia Debtors' business to the Chapter 11 Trustees and shall provide the Chapter 11 Trustees with immediate access to the Escambia Debtors' records, files and/or any other information requested by the Chapter 11 Trustees relating to the Escambia Debtors; and it is further,

ORDERED that, *any assets owned by or titled to the Debtor, Blue Diamond Energy, Inc., that were purchased using funds held by Escambia Operating, shall be deemed to be transferred to and property of the estate of Escambia Operating, without any further action by the Chapter 11 Trustees or the Escambia Debtors*; and it is further,

ORDERED that, Thomas Swarek **_shall cooperate_** with the Chapter 11 Trustees *to insure that all funds transferred from Escambia Operating and equipment acquired using funds held by Escambia Operating, that was transferred to, is owned by, and/or titled to Thomas Swarek, any affiliate of Thomas Swarek, or any entity that Thomas Swarek otherwise owns or controls,[6] is promptly transferred free and clear of liens and claims to Escambia Operating, with all such funds and equipment being deemed property of the estate of Escambia Operating*.

[Blue Diamond Docket No. 470 at 3-4 (emphasis added)].

11.     The Agreed Order provides several notable features. It provides Swarek **shall**:

---

[6] The Trustee's investigation into Swarek to enforce the terms of the Agreed Order, the terms of which Swarek agreed to on behalf of himself, his affiliates, and entities he owns or controls, has revealed one hundred and seven (107) different entities spanning from oil and gas operations, charities, retail, real estate, and more in five (5) states that can be traced to Swarek, an affiliate of Swarek, or an entity that Swarek otherwise owns or controls in some capacity. *See* **Exhibit A**. The Trustee expects to introduce at the hearing on this Motion a chart summarizing each entity, Swarek's relationship to each entity, and links to web sites of various Secretaries of State with formation documents for such entities.  The Trustee requests that the Court take judicial notice of such information pursuant to FED. R. EVID. 201. The Trustee will provide an advanced copy to Mr. Sheehan prior to the hearing in accordance with FED. R. EVID. 1006.

- **immediately** grant access and control over all funds and assets;

- **immediately** grant access to the records, files, and/or **any** other information requested by the Trustee; and

- **cooperate** to ensure all funds transferred, and equipment acquired using such funds are transferred to the Escambia Operating, free and clear of liens and claims.

The Agreed Order is clear—as it relates to Swarek, if Escambia Operating's money was used to buy equipment, it is deemed property of the Escambia Operating Estate and must be returned free and clear of any liens and claims. Similarly, any cash transferred from Escambia Operating must be returned.

12.     The Agreed Order is also notable for what it does <u>not</u> provide:

- It is not limited to funds transferred and equipment acquired with such funds **post-petition**. Consequently, funds transferred and equipment acquired with such funds must be returned to the Escambia Operating Estate whether the transfers and purchases occurred pre-petition or post-petition;

- It does not permit Swarek, his affiliates, or entities he owns or controls, to decide whether equipment purchased with Escambia Operating funds is property of the Escambia Operating Estate. The Agreed Order is self-actualizing in this regard; and

- It does not permit Swarek, his affiliates, or entities he owns or controls to exercise any netting or self-help setoff of claims.

13.     Not only is the directive contained in the Agreed Order clear; the terms of the Agreed Order were also mutually negotiated with the Escambia Debtors—under Swarek's control at the time—having *agreed* to the terms of the Agreed Order.

**B.     Swarek Has Not Complied With The Agreed Order**

> i.      *Swarek has Not Returned Cash Removed from Escambia Operating or Equipment Purchased with Escambia Operating Funds*

14.     Through his preliminary investigation, the Trustee has discovered that Swarek directed the expenditure of substantial amounts of money purchasing equipment at various sales

6

and auctions throughout the United States. The *Joint Motion of Perfection Global LLC and Waupaca Foundry, Inc. for Relief from the Automatic Stay and Abandonment* [Blue Diamond Docket No. 455] (the "**Perfection Global Motion**") and the *Declaration of Adam Stevenson in Support of Perfection Global, LLC and Waupaca Foundry Inc.'s Joint Motion for Relief from the Automatic Stay and Abandonment* [Blue Diamond Docket No. 458] filed in support of the Perfection Global Motion is one of many examples of shopping sprees funded, at least in-part, by Escambia Operating funds and under Swarek's direction.[7]

15.     Based on the Trustee's investigation to date, since 2021 Swarek used or caused to be used at least $11,133,438.94 of Escambia Operating funds to purchase property in the names of the following:

- $106,640.54 in the name of Blue Diamond Services, Inc., an entity owned or controlled by Swarek;

- $107,000.00 in the name of "El Dorado";[8]

- $215,564.30 in the name of Thomas Swarek; and

- $10,704,234.10 in the name of World Aircraft, Inc. ("**World Aircraft**").[9]

---

[7] Also of particular relevance, transfers totaling at least $735,918.00 from Escambia Operating were post-petition transfers for which there was no Court approval. *See* Blue Diamond Docket No. 458-7 at 6. As the Trustee outlines in this Motion, Swarek has demonstrated a complete disregard for the orders of this Court, the Bankruptcy Code, and the Bankruptcy Rules.

[8] It is unknown at this time whether the "El Dorado" holding those assets is El Dorado **Gas & Oil**, Inc. (the debtor in the El Dorado Case) (emphasis added) or a related Mississippi corporation with an almost identical name: El Dorado **Oil & Gas,** Inc. (emphasis added). Adding to the confusion, the voluntary petition filed in the El Dorado Case [El Dorado Docket No. 1] includes El Dorado **Oil & Gas,** Inc. (emphasis added) as an "other name" used in the last eight (8) years. This is just one of many examples of Swarek causing confusion by the creation of entities with substantially similar names. Regardless of which "El Dorado" entity is in view, Swarek owns or controls them both.

[9] World Aircraft is an entity that falls within the Agreed Order as an "entity that Thomas Swarek otherwise owns or controls."

#101903668v19

16.     Attached hereto as **Exhibit B** is a listing of each vendor, the amount of Escambia Operating funds used to make the purchase, and the name of each Swarek-affiliated purchaser discovered to date. The Trustee is continuing to investigate and identify the property purchased by Swarek and his related affiliates with Escambia Operating funds.

17.     Even worse, the Trustee has received reports that Swarek has continued to purchase equipment using funds that either (i) must be returned to the Escambia Estates under the Agreed Order or (ii) are the purported cash collateral of FSB. It has become clear that, absent Court intervention, Swarek intends to continue his spending spree.[10]

18.     The Agreed Order is clear that cash removed from Escambia Operating and property purchased with Escambia Operating funds are subject to the Agreed Order and must be returned to the Trustee. To date, however, little, if any, such property or cash has been returned to the Trustee.

19.     Further investigation may reflect additional cash or property purchased with Escambia Operating funds and other affiliates or affiliated entities involved in such purchases.

      *ii.    Swarek has Not Transferred Title to Real Property Purchased with Escambia Operating Funds*

20.     In addition to purchases of equipment and other property with Escambia Operating funds for the benefit of Swarek, his affiliates, or other related entities, he has used Escambia Operating funds to purchase real property titled in the name of other entities.[11] To date, the Trustee, has located properties in at least twenty-four (24) counties across seven (7) different

---

[10] The Trustee is in the process of seeking discovery from various agents associated with Swarek concerning these continued activities.

[11] Upon information and belief, the transfer of such real property was a material consideration for entering into the Agreed Order.

#101903668v19

states that are titled to Swarek or one of his related entities. Simultaneously, the Trustee is working to trace the extent to which funds from Escambia Operating may have been used to purchase these various properties, directly or indirectly. While the Trustee's investigation is ongoing, the Trustee has identified the following real property interests directly purchased with Escambia Operating funds:[12]

| Property Address | Titled Owner | Tax Appraised Value | Escambia Operating Funds | Purchase Date |
|---|---|---|---|---|
| 3118 15th Street Gulfport, MS 39501 | Blue Diamond Energy, Inc. | $257,187.00 | $406,600.20 | March 2022 |
| 740 Oakleigh Avenue Gulfport, MS 39507 | Blue Diamond Energy, Inc. | $44,985.00 | $129,030.34 | July 2022 |

Moreover, the Trustee has reason to believe that, at a minimum, the following properties were purchased by Swarek or other related entities using funds transferred from Escambia Operating to Swarek, his affiliates, or other related entities in the days leading up to the respective purchase:[13]

| Property Address | Titled Owner | Tax Appraised Value | Purchase Date |
|---|---|---|---|
| 2234E Pass Road Gulfport, MS 39507 | Blue Diamond Energy, Inc. | $513,871.00 | March 2022 |
| 2301 31st Street Gulfport, MS 39501 | Blue Diamond Energy, Inc. | $130,545.00 | May 2021 |
| 1040 W. Highway 80 Jackson, MS 39204 | Family Worship Center of Jackson | $1,521,440.00 | December 2022 |

21.    The Trustee continues to investigate the real property that has been purchased

---

[12] The documentation supporting these allegations is attached hereto as **Exhibit C.**

[13] While the Trustee is still in the process of gathering evidence regarding these transfers, the Agreed Order provides that "Thomas Swarek shall cooperate with the Chapter 11 Trustee[] to insure that all funds transferred from Escambia Operating . . . is promptly transferred free and clear of liens and claims to Escambia Operating . . . " The evidence gathered to date demonstrates, at bottom, Swarek's lack of compliance and obfuscation regarding assets that should be transferred to the Escambia Estates.

#101903668v19

using Escambia Operating funds but titled in the name of Swarek, his affiliates, or other entities. However, the Agreed Order is clear, Swarek was ordered to transfer any real property purchased using Escambia Operating funds to Escambia Operating free and clear of all liens. Swarek has failed to do so. To date, none of the real property purchased using Escambia Operating funds has been transferred to Escambia Operating.

        *iii.*     *Swarek has Intentionally Delayed the Trustee's Requests for the Records, Files, and Other Information*

22.     In fairness, Swarek has communicated with the Trustee on several occasions and has supplied <u>some</u> information requested by the Trustee. However, as outlined below, Swarek is materially non-complaint with the Agreed Order. The Trustee has invested substantial resources investigating the property subject to the Agreed Order while he waits for Swarek to provide the records, files, and other information for which he is entitled to review under the Bankruptcy Code and the Agreed Order. In fact, wholly apart from the Agreed Order, Swarek as representative of the Escambia Debtors has the duty to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate, regardless of whether immunity is provided under section 344 of this title." 11 U.S.C. § 521(a)(4).

23.     At a minimum, the Trustee provided Swarek with a Documentation & Information Request (the "**Request List**") that details specific requested information, the status of that request, and the individual responsible for completing each task, which is attached hereto as **Exhibit D.** To date, Swarek has failed to provide all the information contained in the Request List. Moreover, the Trustee, through counsel, has made numerous requests and has been given mere crumbs of the records, files, and other information relating to the Escambia Estates' operations, the

Escambia Operating funds used to purchase equipment and real property, and other information for which the Trustee is entitled to under both the Agreed Order and the Bankruptcy Code.[14]

24.     Even apart from the Trustee requesting information, Swarek has an affirmative duty to make available to the Trustee all books and records regarding the Escambia Debtors. Instead, the Trustee is limited in his ability to identify assets attributable to Swarek, his affiliates, and his other entities because Swarek and his agents refuse or delay turning over information. For example, despite multiple requests, Swarek has failed to provide the following documentation regarding:

- Ownership interests for the Brantley 36-5 well;

- Deposits made from January 2021 to May 2021 (the last correspondence was from April, stating the account was opened on May 24, 2021);

- Complete banking records and information for accounts owned by Escambia Operating and Escambia Asset;

---

[14] Upon information and belief, Swarek maintains detailed and organized records and has white binders with photographs of the equipment purchased at various auctions throughout the United States. The Trustee has not been afforded an opportunity to review these records. While Mr. Sheehan, on January 22, 2022, agreed to make the white binder available to the Trustee for inspection and copying once the Trustee's counsel requested it, why must the Trustee bear that expense? Why was such information not provided to the Trustee long ago at Swarek's expense? This is but another example of Swarek forcing the Trustee to somehow divine what Swarek has and forcing the Trustee to ask for it. Swarek has turned the Agreed Order on its head. It is Swarek's duty under the Agreed Order and section 521 of the Bankruptcy Code to provide all such information to the Trustee. While the Trustee's counsel is certainly willing to continue working with Mr. Sheehan to obtain information and documents, the pattern of "figure out what you need, then ask me for it" simply cannot continue.

11

- Revenue decks and joint interest billing decks;[15] and

- Specific asset lists and equipment and the location of these assets.

25.     On top of trying to identify information that Swarek refuses to furnish, the Trustee is routinely facing new discoveries of various assets and liabilities, purchase orders, real property, contracts, etc. that Swarek has never mentioned or documented. For example, while the Trustee has obtained numerous fleet vehicles the ("**Vehicles**") from EMKAY Fleet Management ("**Emkay**"), information regarding insurance is either non-existent, conflicting, or inconclusive. Despite consulting with four brokers and obtaining at least eight denials so far from various underwriters, the Trustee has been unable so far to secure insurance for the Vehicles due to Swarek's historical mismanagement. For example, the Trustee has been informed by various underwriters that they cannot provide insurance because:

- Swarek failed to provide all of the multi-year historical loss runs for the Vehicles;

- Swarek maintained convoluted histories of various owners/ownership of the Vehicles;

- Swarek, or entities under his control, failed to previously maintain any insurance on the Vehicles; and

- Swarek maintained multiple insurance policies, under various owners, insuring the same Vehicles simultaneously.[16]

---

[15] While Swarek has provided revenue decks and joint interest billing decks, the data provided was convoluted, inconsistent, and unclear to process.

[16] From June 2021 to May 2022, the Vehicles appear to have been insured by El Dorado and Hugoton; from September 2021 to September 2022, the Vehicles appear to have been insured by Bullzeye Oilfield Services, LLC; and from September 2022 to September 2023, the Vehicles appear to have been insured by Excel Operating LLC and Zapata Excel, LLC, also entities owned or controlled by Swarek. Swarek caused the insurance provided for the benefit of the Escambia Debtors to be cancelled on September 30, 2023, leaving the Trustee with Vehicles that have been problematic to insure.

#101903668v19

Furthermore, the Trustee has learned that a fleet of Vehicles is registered in Alabama with Escambia Operating; however, these Vehicles are actually leased from Emkay under lease agreements in the name of El Dorado.[17] Consequently, the Trustee has been unable to obtain certificates of title and, as a result, unable to obtain insurance.

26.     While the Trustee continues to attempt to obtain insurance on the Vehicles, Swarek's failure to comply with the Agreed Order has hindered the Trustee's ability to obtain simple Vehicle titles and insurance for Vehicles needed in the Escambia Estates' operations.[18] While the Trustee and his advisors have spent substantial time getting the Escambia Debtors' operations safe, compliant with state and federal law, and moving towards potentially profitable, the lack of transparency and information from Swarek and his associates has handicapped this process. While the operational difficulties are being remedied, Swarek's failure to comply with the Agreed Order and the duties of a former debtor-in-possession when a chapter 11 trustee is appointed, still pose a substantial obstacle to the Trustee's efforts to maximize value of the Escambia Estates for creditors.

27.     The Trustee, thus, respectfully submits that the Court should direct the U.S. Marshals to seize all the records contained at Swarek's various information centers that the Trustee has discovered including, but not limited to, 1261 Pass Road, Gulfport, Mississippi 39501; 8 Bayou Place, Gulfport, Mississippi 39503; 612 Cleveland Avenue, Ocean Springs, Mississippi 39564; and 6740 Natchez Street, Biloxi, Mississippi 39532.

---

[17] The fact that El Dorado is now itself in bankruptcy is a significant hurdle for the Trustee. The Trustee is, thus, supportive of the appointment of a chapter 11 trustee over El Dorado (a potential "**El Dorado Trustee**") in order to install a restructuring professional over the El Dorado Case.

[18] Because there is no insurance, these Vehicles cannot be operated and are not being operated on public roads due to the lack of insurance.

#101903668v19

## C.     Swarek has Memorialized His Non-Compliance with the Agreed Order

28.     On December 1, 2023, the Trustee, by counsel, sent Mr. Sheehan[19] a letter (the "**December 1st Letter**")[20] demanding that Swarek deliver to the Trustee "a sworn declaration testifying to Mr. Swarek's compliance with the provisions of the [Agreed Order]." The December 1st Letter further demanded that "[t]o the extent that Mr. Swarek has not fully complied with any provision of the [Agreed Order], the Trustee expects such sworn statement to include an identification of all areas of non-compliance and a detailed explanation as to when Mr. Swarek intends to fully comply with the [Agreed Order]." Finally, the December 1st Letter, stated that "[t]o the extent that Mr. Swarek, or any other affiliates or entities owned or controlled by him, possess any property deemed to be property of the Escambia Debtors pursuant to the [Agreed Order], Mr. Swarek is hereby directed to immediately transfer such property to the Trustee." **Exhibit E** at 3.

29.     Swarek, by counsel, delivered a sworn *Declaration of Thomas Swarek* (the "**Swarek Declaration**")[21] to the Trustee on December 8, 2023. Among other things, the Swarek Declaration swears to the following:

> The Declarant agrees that all assets titled in Blue Diamond and purchased with EOC and/or EAC funds post-petition are deemed

---

[19] To date, Mr. Sheehan has served as bankruptcy counsel and prepared the voluntary petitions and/or pleadings for the Blue Diamond Case, the Escambia Operating Case, the Escambia Asset Case, the Hugoton Case, the El Dorado Case, and the Black Diamond Services, Inc. bankruptcy case (Case No. 23-50305) all pending before this Court. Mr. Sheehan, in some capacity, also seems to be representing Swarek in his individual capacity.

[20] The December 1st Letter is attached to the Trustee's Report filed in the Escambia Debtors' Cases. [Escambia Docket No. 193-2 at 3]. For ease, the December 1st Letter is also attached hereto as **Exhibit E**. The deadlines in the December 1st Letter were informally extended by counsel.

[21] The Swarek Declaration is attached to the Trustee's Report filed in the Escambia Debtors' Cases. [Escambia Docket No. 193-3]. For ease, the Swarek Declaration is also attached hereto as **Exhibit F**.

#101903668v19

transferred to EOC. . . .

I have, personally cooperated with the Chapter 11 Trustee to insure that all funds transferred from EOC to myself or any affiliates or entities under my control are properly transferred to EOC …

I have personally cooperated with the Chapter 11 Trustee to ensure that all equipment acquired post-petition using funds of EOC that were transferred to or titled in myself or any affiliate under my control ('Swarek Entities') are promptly transferred free and clear of liens and claims to EOC. . . .

It is unclear which items of personal property (i.e., oilfield equipment and other business personal property) are property of the EOC Bankruptcy Estate, and which are property of one of my affiliated entities. It is therefore unclear to what extent, if any, that I am not in compliance with the Agreed Order. It is estimated that it will take at least two months to make such a determination. Therefore I cannot confirm full compliance with the Agreed Order at this time. . . .

Also unclear is an accounting between EOC and entities owned or controlled by me. There were numerous transfers of funds to and from EOC accounts to and from Swarek Entities, and transfer to Swarek Entities in exchange for goods and services. It is estimated that it will take a least one month to make a full and accurate accounting. Therefore I cannot confirm full compliance with the Agreed Order in this regard at present.

*See* **Exhibit F**. Swarek, however, is <u>not</u> in compliance with the Agreed Order.

30.     Consequently, it is astonishing that Swarek alleges under penalty of perjury, "I have personally cooperated with the Chapter 11 Trustee <u>to ensure</u> that <u>all equipment</u> acquired post-petition using funds of EOC that were transferred to or titled in myself or any affiliate under my control ('Swarek Entities') <u>are promptly transferred free and clear of liens and claims to EOC</u>." *See* **Exhibit F** ¶ 6 (emphasis added). To the contrary, Swarek has not returned <u>any</u> of the equipment identified in paragraph 15 and 16 above or included on **Exhibit B**. Despite this information, Swarek has failed to return the $106,640.54 of equipment in the name of Blue Diamond Services,

Inc., the $215,564.30 of equipment in his own name, or the $10,704,234.10 of equipment in the name of World Aircraft.[22]

31.     In fact, Swarek has taken <u>active steps</u> to <u>prevent</u> the return of some such property to the Trustee. For example, by subsequently causing El Dorado to file for chapter 11 relief, Swarek may now need an order of this Court in the El Dorado Case to return such equipment to the Trustee.[23] Additionally, the automatic stay in the El Dorado Case impedes the Trustee's ability to seize or file legal proceedings to obtain property held in the name of El Dorado.

32.     It is already clear that the Trustee has had to take steps to preserve his claims in El Dorado with its primary lender, FSB, to the extent it claims that its lien documents extend to property titled in El Dorado purchased with Escambia Operating funds or non-debtor World Aircraft purchased with Escambia Operating funds.[24] To the extent El Dorado's primary lender

---

[22] Given the trend of serial bankruptcy filings initiated by Swarek — Blue Diamond, Escambia Assets, Escambia Operating, Hugoton, and El Dorado — the Trustee is concerned that bankruptcy filings by other affiliates may be next.

[23] Indeed, Swarek directing the filing of the El Dorado Case may be an act in contempt of the Agreed Order. In other words, by placing El Dorado in bankruptcy, Swarek has side-stepped the Agreed Order by putting Escambia Estates' assets out of the Trustee's immediate reach and under the protection of the El Dorado automatic stay, rather than promptly turning them over and ensuring such assets are turned over. Such action is even more egregious considering that Swarek himself is the officer of El Dorado acting as debtor in possession in the El Dorado Case.

[24] The Trustee incorporates by reference herein his *Response to First Service Bank's Emergency Motion for Entry of an Order (I) Prohibiting the Use of Cash Collateral, or, in the Alternative, (II) to Provide for Adequate Protection as a Condition to Use Cash Collateral* [El Dorado Docket No. 61] and his *Limited Objection to Emergency Motion for Approval of Interim and Final Use of Cash Collateral and Finding of Adequate Protection* filed in the El Dorado Case [El Dorado Docket No. 62].

#101903668v19

does assert a lien on property purchased with Escambia Operating funds, then Swarek has failed to return such property "free and clear of liens and claims" as required by the Agreed Order.[25]

33.    Swarek attempts to hide his non-compliance in part by adding in the Swarek Declaration a distinction that is not provided for by the Agreed Order. He states in the Swarek Declaration, "I have personally cooperated with the Chapter 11 Trustee to ensure that all equipment **acquired post-petition using funds of EOC** that were transferred to or titled in myself or any affiliate under my control ('Swarek Entities') are promptly transferred free and clear of liens and claims to EOC." (emphasis added). But as noted earlier, the Agreed Order does not limit the time period of fund transfers and equipment purchases to post-petition. Any fair reading of the Agreed Order requires Swarek to return such equipment whether it was acquired pre- or post-petition.

34.    Swarek also attempts to cloud the issue of his non-compliance by stating, "It is unclear which items of personal property (i.e., oilfield equipment and other business personal property) are property of the EOC Bankruptcy Estate, and which are property of one of my affiliated entities. It is therefore unclear to what extent, if any, that I am not in compliance with the Agreed Order." *See* **Exhibit F** ¶ 7. As previously explained, the only inquiry under the Agreed Order is this: was the property purchased with Escambia Operating funds? If so, that property is deemed property of the Escambia Operating estate and Swarek must return that property. The Agreed Order does not permit Swarek to unilaterally stall his compliance by some supposed lack of clarity created by his own misappropriation of funds and lack of record keeping.

---

[25] As previously mentioned, the same issues may be in play with regard to World Aircraft, which allegedly has pledged collateral to FSB to secure the El Dorado obligations.

35.     Swarek further clouds the issue of his non-compliance by alleging, "Also unclear is an accounting between EOC and entities owner or controlled by me. There were numerous transfers of funds to and from EOC accounts to and from Swarek Entities, and transfer to Swarek Entities in exchange for goods and services." *See* **Exhibit F** ¶ 8. But as noted previously, the Agreed Order does not permit Swarek to violate the automatic stay in the Escambia Debtors Case by refusing to return estate property based on some kind of self-help netting or offsetting of claims. If property was purchased with Escambia Operating funds, such property is to be returned – period. If Swarek, one of his affiliates, or one of his entities has some alleged offsetting claim, that claim can be filed in the appropriate bankruptcy case and handled under the direction and supervision of the Court, the Trustee, and other capable business and bankruptcy professionals.

36.     It is remarkable that Swarek does not identify in the Swarek Declaration a **<u>single piece of equipment or property</u>** that (1) was purchased using Escambia Operating funds or (2) has been returned to the Trustee in compliance with the Agreed Order. The fact that Swarek was made aware of particular property and equipment that were at issue in the provisions of the Agreed Order highlights the absurdity of Swarek's continued non-compliance.

**D.      Swarek is Apparently Actively Violating the Agreed Order**

37.     Not only has Swarek failed to comply with the Agreed Order, he is apparently in active violation of the Agreed Order.

38.     The Trustee has learned that Swarek is actively attempting to move assets that may be subject to the Agreed Order outside of the United States or otherwise dispose of such assets. This includes assets of World Aircraft. Among other proof to be presented at the hearing on this Motion, is the *Declaration of Jamie Cook Pursuant to 28 U.S.C. § 1746* filed in the Hugoton Case and El Dorado Case. [Hugoton Docket No. 188-1; El Dorado Docket No. 102-1].

#101903668v19

E.    **Swarek's Non-Compliance with, and Active Violation of, the Agreed Order Requires Immediate Court Intervention**

39.    Trustee, through his counsel, has cautioned Swarek that, if he continued to not comply with the Agreed Order, the Trustee would be obligated to seek appropriate relief from the Court, including holding him in contempt and sanctions, for Swarek's violation of the Agreed Order. As the Trustee continues to learn more about Swarek, his other business entities, and his business practices, it has become apparent that the Trustee must use every avenue possible to ensure that the value of the Escambia Estates is preserved.

40.    While the Trustee's investigation to date has been diligent and persistent, the expedited nature of this request is predicated in part on a concern that assets that should be returned to the Escambia Estates will be further dissipated by removal from U.S. jurisdiction, by transfers to third parties, or by further confusion due to inter-company transfers.[26] Indeed, the Trustee has been informed by one or more of Swarek's current or former employees that Swarek is in the process of removing  assets—some of which may be traceable to the Escambia Estates—to South America and may be fleeing the United States. Other individuals have reported that Swarek is in the process of selling assets belonging to "El Dorado" and "World Aircraft."

41.    Consequently, the Trustee is bringing this matter to the Court to obtain further relief on a matter that had been previously addressed by this Court and to request that the Court this time hold Swarek accountable to the highest degree possible within the confines of this Court's authority. The Trustee, therefore, requests that the Court hold Swarek in civil contempt and impose sanctions if he continues to willfully disregard the Agreed Order or take any action adverse to the

---

[26] This Court has previously expressed concerns that "[i]t seems that all of these entities are so intertwined. I'm not sure that we can unscramble the eggs." Hugoton Docket No. 179 (1/9/24 Hr'g Tr: 22:22-24).

#101903668v19

Agreed Order either individually or through the entities still under his direction or control. The Trustee further requests that the Court issue an injunction to allow the Trustee even more judicial backing in his efforts to preserve the value of the Escambia Estates.

## LAW AND ANALYSIS

**A.      Section 105 of the Bankruptcy Code Allows the Court to Enforce its Own Orders**

42.      Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

43.      Under this statute and its inherent powers, the Court has the authority to issue an order enforcing the terms of the Agreed Order. *See Barner v. Saxon Mortg. Servs.*, 2008 U.S. Dist. LEXIS 105341, at *9, n.3 (Bankr S.D. Miss. Sept. 30, 2008) (citing *In re WorldCorp. Inc.,* 252 B.R. 890, 895 (Bankr. D. Del. 2000) (noting bankruptcy courts may enforce orders upon motion)) (other citation omitted); *Pompa v. Wells Fargo Home Mortg., Inc. (In re Pompa)*, 2012 Bankr. LEXIS 3051, at *13-16 (Bankr. S.D. Tex. June 29, 2012) (explaining a bankruptcy court has the authority to enforce its own orders pursuant to 11 U.S.C. § 105(a)); *see also Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1063 (5th Cir. 1997) (affirming a bankruptcy court's ability to enforce its own orders upon a motion for contempt to enforce compliance with orders); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000) ("§ 105 provides a bankruptcy court with statutory contempt powers, in addition to whatever inherent contempt powers the court may have") (citations omitted); *Cano v. GMAC Mortg. Corp. (In re Cano)*, 410 B.R. 506, 540 (Bankr. S.D. Tex. 2009) ("A bankruptcy court's authority under § 105 to enforce its own orders cannot be reasonably questioned"); *Sanchez v. Ameriquest Mortg. Co. (In re Sanchez)*, 372 B.R. 289, 310 (Bankr. S.D. Tex. 2007) (explaining

20

a bankruptcy court's inherent contempt powers and powers to enforce orders pursuant to section 105).

44.    In fact, courts have used section 105 to force strict compliance with court orders and provisions of the Bankruptcy Code, such as the provisions of the Agreed Order requiring turnover of property of the estate and related information to the Trustee pursuant to a trustee's rights underlying 11 U.S.C. § 542(a). *See, e.g., In re Pompa*, 2012 Bankr. LEXIS 3051, at *5.

45.    While the Trustee has not uncovered **_every_** way in which Swarek is in violation of the Agreed Order, it is clear that Swarek is in violation of the Agreed Order– actively, by seeking to further transfer property and passively by failing to act as required by the Agreed Order and the Code. Therefore, the Trustee respectfully requests the Court enter an order enforcing the Agreed Order and ordering Swarek to **_immediately_** turnover to the Trustee the assets and information he is required to by the Agreed Order. The Court should use its authority under section 105 of the Bankruptcy Code to enforce its own orders and put an end to Swarek's stall tactics.

**B.    Swarek Has Failed to Comply with and Violated the Agreed Order and Should be Held in Contempt and Sanctioned**

46.    A bankruptcy court may hold a party in civil contempt of court pursuant to 11 U.S.C. § 105(a) and its inherent powers. *In re Joubert*, 411 F.3d 452, 455 (3d Cir. 2005); *Matter of Terrebonne Fuel & Lube*, 108 F.3d 609, 612 (5th Cir. 1997).

47.    Pursuant to Fifth Circuit precedent, "[i]n a civil contempt proceeding, the party seeking an order of contempt need only establish (1) that a court order was in effect […], (2) that the order requiring certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *In re De La Fuente*, 430 B.R. 764, 784-85 (Bankr. S.D. Tex. 2010) (citing *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995)).

48.     "To determine compliance with an order, the court simply asks whether the respondent has [performed the acts required by the order]. If he has not, the burden shifts to the respondent to rebut this conclusion, demonstrating an inability to comply, or present other relevant defenses." *Id.* (citing *Martin v. Trinity Indus. Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)). "The movant need not show that the conduct was willful so long as the 'contemnor actually failed to comply with the court's order.'" *In re Reno*, 299 B.R. 823, 825 (Bankr. N.D. Tex. 2003) (quoting *American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000)).

49.     As outlined in the Motion and will be further proven by the testimony at a hearing on the Motion, Swarek has not complied with the Agreed Order.[27] The Agreed Order has been in effect since October 11, 2023. The Agreed Order required Swarek to take particular actions with regards to funds from Escambia Operating and equipment and property obtained using Escambia Operating funds. The Agreed Order is clear, and yet, Swarek has managed to violate almost every provision of the Agreed Order.

50.     To date, Swarek has not turned over all assets and information in violation of the Agreed Order. Swarek has not turned over all the information the Trustee requested, as outlined in **Exhibit D**. Further, Swarek has not turned over ***any assets*** to the Trustee despite evidence of him using over $11 million in Escambia Operating funds to purchase equipment to be used by himself and his other entities. While the Trustee has no doubt there are more violations to document, the evidence contained in this Motion is overwhelming.

51.     At this juncture, Court intervention is more necessary than ever to enforce the Agreed Order.

---

[27] Indeed, the Trustee learns of new potential infractions of the Agreed Order on an almost weekly basis. The Trustee, thus, intends to present additional testimony on any new information gathered after the filing of this Motion and up until when the Motion may be heard.

#101903668v19

52.     Where it is necessary to force compliance with a court's orders, the court should employ civil contempt sanctions sufficient to coerce compliance with the court's order. *Quilling v. Funding Resource Case Group*, 227 F.3d 231, 234 (5th Cir. 2000) (explaining nature of civil contempt); *Kellogg v. Chester*, 71 B.R. 36, 37 (N.D. Tex. 1987) (confirming authority of bankruptcy court to employ civil contempt sanctions); *see also In re Newport Offshore, Ltd.*, 88 B.R. 566, 572 (Bankr. D.R.I. 1988) (enforcing confirmed plan with civil contempt sanctions).

53.     A court may impose fines in civil contempt proceedings to compensate a party for unnecessary injuries suffered and costs incurred because of the contemptuous conduct. *United States v. United Mine Workers*, 330 U.S. 258, 302-04 (1947); *Petroleos Mexicanos v. Crawford Enteres., Inc.*, 826 F.2d 392, 400 (5th Cir. 1987).

54.     Judicial sanctions should be employed and are requested in order to coerce Swarek from violating the Agreed Order, and to compensate for attorney fees and expenses. *See, e.g., Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976); *Petroleos Mexicanos*, 826 F.2d at 401.

55.     Here, the Trustee has incurred attorney's fees and costs, as well as other professional fees and costs, as a result of Swarek's violation of the Agreed Order. These expenses are continuing to accrue and have become the burden of the Escambia Estates. Swarek should not be allowed to depreciate the value of the Escambia Estates by refusing to comply with the Agreed Order while also running up a large bill for the Escambia Estates. Therefore, the Court may order the payment of damages, including attorney fees, as a civil contempt sanction.

56.     The Trustee respectfully requests that Swarek should be appropriately sanctioned for actual damages, costs, attorney's fees, and punitive damages that the Court deems appropriate for willful violations of the Agreed Order in an amount to be proven at a future hearing.

57.     To the extent the Court enters an order directing Swarek to take certain actions, the Trustee requests that the Court issue an appropriate daily monetary sanction until Swarek has purged himself of contempt.

58.     Overall, Swarek must be held in contempt of this Court for his violations of the Agreed Order and appropriately sanctioned for his behavior in order to protect the Escambia Estates and ensure future compliance with this Court's orders.

## C.     The Court Should Issue Injunctive Relief

59.     The Agreed Order is significant in that it establishes the ability of the Trustee to seek a form of injunctive relief to enforce the Agreed Order from Swarek, the Escambia Debtors' prior management, and entities that Swarek has / had control over without filing an adversary proceeding because Swarek has effectively waived any rights to claim that an adversary proceeding must be brought pursuant to Rule 7001(1) of the Bankruptcy Rules to require such turnover of assets and information. *See, e.g., Fifth Third Bank v. Hayes (In re Hayes)*, Nos. 11-30499, 11-3226, 2012 Bankr. LEXIS 1230, at *8, n.7 (Bankr. S.D. Ohio Mar. 22, 2012) ("This court has entertained and will continue to entertain agreed orders in other areas also without the filing of a motion or adversary proceeding when all affected parties have consented to the relief sought as evidenced through their consent obtained to the proposed agreed order.").[28]

60.     Ordinarily, the Court's exercise of its stay power under section 105(a) of the Bankruptcy Code is subject to Rule 65 of the Federal Rules of Civil Procedure, as made applicable to adversary proceedings by Rule 7065 of the Bankruptcy Rules. FED. R. CIV. P. 65; FED. R. BANKR. P. 7065. However, Rule 7065 of the Bankruptcy Rules provides, "a temporary restraining

---

[28] The fact that Swarek has effectively consented to the Agreed Order, moreover, allows the Court to act swiftly.

order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c) [of the Federal Rules of Civil Procedure]." FED. R. BANKR. P. 7065. The issuance of a preliminary injunction is within the discretion of the Court. 10 COLLIER ON BANKR. ¶ 7065.02 (16th ed. 2024).

61.     The four (4) elements the Court must consider for preliminary injunctive relief are: (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction; and (4) that the granting of the injunction will not disserve the public interest. *See Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 765 (5th Cir. 1995) (citing *Commonwealth Oil Ref. Co. v. U.S.E.P.A. (In re Commonwealth Oil Ref. Co.)*, 805 F.2d 1175, 1189 (5th Cir. 1986)). "The Fifth Circuit employs a sliding scale when analyzing the degree of success on the merits a movant must demonstrate to justify injunctive relief. This involves balancing the hardships associated with the issuance or denial of a preliminary injunction with the degree of likelihood of success on the merits." *Lentz v. Cahaba Disaster Relief, LLC (In re CDP Corp.)*, 462 B.R. 615, 629 (Bankr. S.D. Miss. 2011) (internal citations & quotations omitted).

i.      *Substantial Likelihood Trustee Will Prevail on the Merits*

62.     The evidence contained in this Motion and the Exhibits, at a minimum, present a prima facie case that Swarek has not complied with the Agreed Order. The standard only requires a prima facie case and not that the Trustee is certain to win, even though the Trustee believes the evidence is overwhelmingly in his favor. *Janvey v. Alguire*, 647 F.3d 585, 595-96 (5th Cir. 2011). By this Motion, the Trustee seeks an order (1) enforcing the Agreed Order; (2) holding Swarek in contempt; (3) awarding sanctions; (4) granting mandatory and prohibitory injunctive relief; and

(5) related relief on an expedited basis. As has been detailed in this Motion and the Exhibits, and will be further proven at the hearing, Swarek has not complied with the Agreed Order. Swarek has continued to violate the Agreed Order. Swarek's actions are a collateral attack on the Agreed Order. The Trustee, therefore, has demonstrated that holding Swarek in contempt and/or awarding sanctions is reasonable based on the circumstances.

ii.     *Substantial Threat Trustee Will Suffer Irreparable Harm*

63.     The evidence contained in this Motion and the Exhibits demonstrate that Swarek individually and through his other entities has ignored Court orders and has instead exercised unauthorized authority over property of the Escambia Estates. The Escambia Estates have suffered irreparable harm and will continue to suffer irreparable harm if the Court does not use every possible tool to enforce the Agreed Order. Injunctive relief is another source of enforcement power this Court has to force Swarek to comply with the Agreed Order.

iii.     *Preliminary Injunction will Not Cause Harm*

64.     A preliminary injunction against Swarek and his other entities from continuing to violate the Agreed Order, and arguably perpetuate a further fraud on creditors, will not cause harm. Instead, injunctive relief is another form of protection against further harm. In other words, injunctive relief is merely a "prohibition from doing that which [Swarek] is not permitted to do in the first place." *Henkel v. Lickman (In re Lickman)*, 286 B.R. 821, 831 (Bankr. M.D. Fla. 2002).

iv.     *Preliminary Injunction Will Not Disserve Public Interest*

65.     The Trustee has previously raised the public health and safety issues at risk in this matter, which clearly serve the public interest. Moreover, the enforcement of a court order outweighs any competing social interests. The policies underlying an orderly and effective judicial

26

system are well served by injunctive relief and outweigh any possible competing concerns of Swarek or his related entities.

*v.*     *Sufficiently Unusual Circumstances Exist*

66.     Injunctive relief requires not only the satisfaction of the usual prerequisites under Rule 65 of the Federal Rules of Civil Procedure but also the demonstration of "unusual circumstances." *In re Zale Corp.*, 62 F.3d at 761. The Fifth Circuit itself has recognized, however, that "[v]ery little Fifth Circuit case law exists concerning injunctions issued by a bankruptcy court to [temporarily or permanently] bar claims between nondebtor third parties." *In re Zale Corp.*, 62 F.3d at 751, n. 14 (allowing the trustee to enjoin actions between noncreditors and nondebtor in "unusual circumstances"). Although the Fifth Circuit has not directly addressed the issue of "unusual circumstances" when the actions of a nondebtor create a collateral attack on an order of a bankruptcy court, "other courts have recognized that such an attack presents the unusual circumstances necessary to warrant an injunction." *In re CDP Corp.,* 462 B.R. at 633-34.

67.     As the Court is aware, Swarek and his related entities present an unusual arrangement that has required substantial time and resources to untangle. Compounding the difficulty of these circumstances, with multiple pending bankruptcy cases, various lawsuits against various members of this web, and the girth of the issue are just a few reasons that the circumstances meet the unusual requirement. Moreover, Swarek's actions through his agents and his non-debtor entities create a sufficient collateral attack on the Agreed Order to justify an injunction.

68.     The Escambia Trustee is entitled to: (a) a mandatory injunction compelling Swarek, entities under his control, and persons operating on his behalf to return all cash removed from Escambia Operating and equipment purchased with such funds; and (b) a prohibitory

27

injunction preventing Swarek, entities under his control, and persons operating on his behalf from transferring any property directly or indirectly acquired with Escambia Operating funds.

**D.     Bankruptcy Rule 7070 Allows the Court to Issue a Writ of Execution for Assets and Information Required to be Turned Over by Swarek Pursuant to the Agreed Order**

69.     Effectively, by consenting to the terms of the Agreed Order, Swarek agreed to an order to turnover property of the estate and related information to the Trustee pursuant to 11 U.S.C. § 542(a).

70.     Section 542(a) provides, in pertinent part, that anyone who has "possession, custody, or control" of bankruptcy estate property must deliver that property to the trustee and "account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

71.     "By its express terms, section 542(a) is self-executing, and does not require that the trustee take any action or commence a proceeding or obtain a court order to compel the turnover." *See Cordova v. City of Chicago*, 2021 Bankr. LEXIS 3335, at *25 (Bankr. N.D. Ill. Dec. 6, 2021) (citations omitted).

72.     Here, the Agreed Order incorporates the self-executing terms of section 542(a) of the Bankruptcy Code into an order requiring Swarek to turnover certain assets and information.

73.     Further, the Agreed Order allows the Trustee to obtain a writ of execution as outlined in Bankruptcy Rule 7070.

74.     Bankruptcy Rule 7070 not only applies to judgments, but also applies to the enforcement of contested matters, so long as there is a court order requiring such turnover. *See In re Kerlo*, 311 B.R. 256, 262 (Bankr. C. Cal. 2004) (applying Bankruptcy Rule 7070 to enforce an order resulting from a contested matter); *Onubah v. Zamora (In re Onubah)*, 375 B.R. 549, 553 (B.A.P. 9th Cir. 2007) (U.S. Marshal was utilized to collect assets to enforce a turnover order

28

obtained by a bankruptcy trustee); *Wong v. Lubetkin (In re 40 Lake View Drive, LLC)*, 2018 U.S. Dist. LEXIS 58958, at *5 (D.N.J. April 6, 2018) (same); *In re Machevsky*, 2021 Bankr. LEXIS 31, at *5 (Bankr. C.D. Cal. Jan. 8, 2021) (same).

75.     Federal Rule of Civil Procedure 70, made applicable by Bankruptcy Rule 7070, applies to a turnover of possession of property and information to a bankruptcy trustee, such as the situation here. *In re Kerlo*, 311 B.R. at 262 ("As a matter of practice, in contested matters seeking to enforce an order for turnover of property of the estate from the debtor, trustees should request that the court apply FRBP 7070 in their motion.").

76.     Federal Rule of Civil Procedure 70(a) states:

> If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done --- at the disobedient party's expense --- by another person appointed by the court. When done, the act has the same effect if done by the party.

77.     Here, because Swarek has not complied with the turnover of assets and information as outlined in the Agreed Order, the Court can order the appointment of another person to carry out the tasks of turnover of the property described in the Agreed Order, such as a U.S. Marshal.

78.     Moreover, Federal Rule of Civil Procedure 70(d) provides: "On application by a party who obtains a judgment or order for possession, the clerk must issue a writ of execution or assistance." FED. R. CIV. P. 70(d).

79.     Thus, the Court, pursuant to this rule, should issue a writ of execution or assistance since the Trustee has a final Agreed Order for turnover or possession of property and information to the Escambia Estates. Such relief should include an order directing the U.S. Marshals to retrieve documents and equipment at the following locations: 1261 Pass Road,

Gulfport, Mississippi 39501; 8 Bayou Place, Gulfport, Mississippi 39503; 6740 Natchez Street, Biloxi, Mississippi 39532; 1040 W. Highway 80, Jackson, Mississippi 39204; 3806 E. Rio Grande Street, Victoria, Texas 77901; 612 Cleveland Avenue, Ocean Springs, Mississippi 39564; 2234 E. Pass Road, Gulfport, Mississippi 39507; 740 Oakleigh Avenue, Gulfport, Mississippi 39507; 27530 US-31, Flomaton, Alabama 36441; 2624 Highway 72, Three Rivers, Texas 78071; and 1094 North 281 Bypass, Alice, Texas 78332.

80.     The Trustee respectfully requests this Court to issue an order to provide any relief it finds necessary to ensure Swarek's compliance with the Agreed Order given that a court may issue an order pursuant to 11 U.S.C. § 105, which provides that "[n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105.

E.    **Procedural Matters**

81.     The Trustee is aware that Uniform Bank. L. R. 5005-1 requires motions to include a proposed order. However, the almost daily discovery of new violations of the Agreed Order suggest that any proposed order included with this Motion would not account for all factual data and relief the Court may be inclined to grant upon hearing the evidence. Accordingly, the Trustee requests that the Court waive the requirement of a proposed order.

82.     The Trustee respectfully requests that the Court consider this Motion and the relief requested herein on an expedited basis to preserve the value of the Escambia Estates. Based on the information contained in this Motion, and the information that the Trustee continues to learn, Swarek is an ongoing threat to the value and property of the Escambia Estates. The Trustee, therefore, believes that expedited consideration is not only appropriate but necessary.

30

## CONCLUSION

83.     This is not a game of Whack-a-Mole in which the Trustee has to constantly ask for information and swing the mallet at every entity Swarek owns or controls in the hopes of obtaining the complete picture of the Escambia Debtors' assets and financial affairs. Swarek has the documents. He knows what equipment was purchased and how much cash was removed from Escambia Operating. He has the relevant information. The Trustee should not have to expend significant resources forcing Swarek to comply with the Agreed Order. The burden of compliance is on Swarek. He has failed to comply in material ways. The Trustee requests that the Court use the tools available under the Bankruptcy Code, the Bankruptcy Rules, and all other sources of authority the Court finds appropriate to compel compliance.

**WHEREFORE,** the Trustee files this Motion and requests the entry of an order (1) enforcing the Agreed Order; (2) holding Thomas Swarek in contempt; (3) requiring Thomas Swarek to pay sanctions; (4) for injunctive relief; (5) for expedited consideration of this Motion; and (6) for such other and further relief as the Court deems just and appropriate.

*[Remainder of Page Intentionally Blank]*

#101903668v19

Dated: January 22, 2024          Respectfully submitted,

                                          */s/ Jeffrey R. Barber*
                                          Jeffrey R. Barber (Mississippi Bar No. 1982)
JONES WALKER LLP
3100 North State Street (39216)
P.O. Box 427
Jackson, Mississippi 39205
Tel: 601-949-4765
Fax: 601-949-4804
Email: jbarber@joneswalker.com

-and-

Joseph E. Bain (Texas Bar No. 24085187)
Olivia K. Greenberg (Texas Bar No. 24127683)
JONES WALKER LLP
811 Main Street, Suite 2900
Houston, Texas 77002
Tel: 713-437-1800
Fax: 713-437-1810
Email: jbain@joneswalker.com
         ogreenberg@joneswalker.com

***Counsel for Drew McManigle, Duly-Appointed Chapter 11 Trustee of Escambia Operating Company, LLC and Escambia Asset Company, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on this day, Monday, January 22, 2024, the foregoing was filed electronically with the Clerk of the Court using the Court's ECF system, which served a true and correct copy of such paper electronically on all parties enlisted to receive service electronically as of the date hereof, including the following:

Patrick A. Sheehan, Esq.
pat@sheehanramsey.com
Counsel for Debtor

David W. Asbach
USTPRegions05.JA.ECF@usdoj.gov
United States Trustee

Abigail M. Marbury
Abigail.m.marbury@usdoj.gov
Assistant U.S. Trustee

*/s/ Jeffrey R. Barber*

#101903668v19