**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| ESCAMBIA OPERATING COMPANY, | § | |
| LLC, *et al.*, | § | Case No. 23-50491 JAW |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**CHAPTER 11 ESCAMBIA TRUSTEE'S SECOND**
**STATUS REPORT AND STATEMENT OF INVESTIGATION**

Drew McManigle, the duly-appointed chapter 11 trustee (in such capacity, the **"Escambia**

**Trustee"**), of the bankruptcy estates of Escambia Operating Company, LLC (**"Escambia**

**Operating"**) and Escambia Asset Company, LLC (**"Escambia Asset"** and together with

Escambia Operating, the **"Escambia Debtors"** with such bankruptcy estates collectively being

the **"Escambia Estates"**),[2] by and through the Escambia Trustee's legal counsel Jones Walker

LLP (**"Jones Walker"**), hereby files this *Second Status Report and Statement of Investigation*

(this, the Escambia Trustee's **"Second Status Report"**) regarding the Escambia Estates pursuant

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Escambia Operating Company, LLC (2190) and Escambia Asset Company, LLC (2000). Citations to the record are as follows: citations to docket entries in the above-captioned, jointly administered bankruptcy cases (the **"Escambia Debtors' Cases"**) are cited as "[Docket No. ____]"; citations to docket entries in the chapter 11 bankruptcy case captioned as *In re Blue Diamond Energy, Inc.*, Case No. 23-50490 (the **"Blue Diamond Case"**), in the United States Bankruptcy Court for the Southern District of Mississippi (the **"Bankruptcy Court"**) are cited as "[Blue Diamond Docket No. ____]".

[2] This Second Status Report attempts to make distinctions where appropriate between Escambia Operating and Escambia Asset. However, because of the sometimes-indiscriminate way prior management and the Escambia Debtors' books and records referred to both entities, precision in this regard is not assured.

1

#102065292v7

to sections 1106(a)(3)-(4) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the **"Bankruptcy Code"**):

## PRELIMINARY STATEMENT

1.      Four days ago, Bluestone Natural Resources II – South Texas, LLC (**"Bluestone"**) and World Aircraft, Inc. (**"World Aircraft"**) became the sixth[3] and seventh[4] entities owned directly or indirectly by Thomas Swarek to seek chapter 11 relief under the Bankruptcy Code.[5] As previously disclosed, the Escambia Trustee's investigation has revealed more than one hundred different entities that can be traced to Swarek.[6] More chapter 11 filings, thus, may be coming.

2.      Since his appointment on October 25, 2023, the Escambia Trustee has been actively investigating the acts, conduct, assets, liabilities, and financial condition of the Escambia Debtors and, by extension, the general operation of related entities owned by Swarek. While questions remain regarding Swarek's business operations, what is clear—and undeniable based on the Escambia Trustee's four-month long investigation—is that ***under no circumstances should Thomas Swarek be allowed to maintain any operational control over any entity that is under the Bankruptcy Court's jurisdiction***. As this Second Status Report further demonstrates, there is

---

[3] *In re Bluestone Natural Resources II – South Texas, LLC*, Case No. 24-50223 (Bankr. S.D. Miss.).

[4] *In re World Aircraft, Inc.*, Case No. 24-50224 (Bankr. S.D. Miss.).

[5] *In re Blue Diamond Energy, Inc.,* Case No. 23-50490 (Bankr. S.D. Miss.); *In re Escambia Operating Company, LLC and Escambia Asset Company, LLC*, Case No. 23-50491 (Bankr. S.D. Miss.); *In re Hugoton Operating Company, Inc.*, Case No. 23-51139 (Bankr. S.D. Miss.); *In re El Dorado Gas & Oil, Inc.*, Case No. 23-51715 (Bankr. S.D. Miss.).

[6] *See Chapter 11 Trustee's Emergency Motion (1) to Enforce Agreed Order Resolving Breitburn Operating LP's Motion for Appointment of a Chapter 11 Trustee; (2) for Contempt; (3) for Judicial Sanctions; (4) for Injunctive Relief; (5) for Expedited Consideration; and (6) Related Relief* (**"Motion to Enforce"**) [Docket No. 212] at 5 n.6 and at Exhibit A.

ample evidence of the waste and loss of material value inflicted upon the Escambia Debtors (and other entities) by Swarek.

## UPDATE: LEGAL MATTERS

### A.      Escambia Cases

#### *Bankruptcy Case*

3.      On December 11, 2023, the Escambia Trustee filed his *Chapter 11 Trustee's First Status Report and Statement of Investigation Pursuant to 11 U.S.C. § 1106(a)(3)-(4)* [Docket No. 193] (the **"First Status Report"**).[7]

4.      Approximately one month later, the Escambia Trustee filed his Motion to Enforce seeking enforcement of the Bankruptcy Court's *Agreed Order Resolving Breitburn Operating LP's Motion for Appointment of a Chapter 11 Trustee* [Blue Diamond Docket No. 470] (the **"Agreed Order"**). The Escambia Trustee filed the Motion to Enforce, among other reasons, to compel the production of information necessary to complete his investigation and to compel delivery of assets of the Escambia Estates as required by the Agreed Order.

5.      On January 30, 2024, Blue Diamond and Swarek, "in his capacity as President of Blue Diamond and not in his individual capacity[,]" filed the *Response to Trustee's Motion to Enforce Agreed Order (Doc. 212)* [Docket No. 247].

6.      In connection with the Motion to Enforce and other contested matters identified below, and to obtain information needed for his investigation, the Escambia Trustee noticed the deposition of William Michael Graves and noticed the deposition of Alison Butera. In connection with the Butera deposition, the Escambia Trustee also served a subpoena on Ms. Butera requesting

---

[7] Creditors of the Escambia Debtors and other interested parties are encouraged to review the First Status Report. Defined terms used herein but not otherwise defined have the meaning ascribed to such terms in the First Status Report.

#102065292v7

that she produce all documents that refer or relate to any of the entities listed on the attachment to the subpoena (the **"Document Subpoena"**) [Docket No. 242]. As a result of the Document Subpoena, the Escambia Trustee is in the process of forensically securing the Documents, as defined in the Document Subpoena, and they are being reviewed by the Escambia Trustee and his advisors.

7.     The hearing on the Motion to Enforce was held on February 1-2, 2024. The Bankruptcy Court subsequently entered an *Agreed Order (1) Continuing Hearing on Chapter 11 Trustee's Emergency Motion to Enforce; (2) Setting Status Conference on Chapter 11 Trustee's Emergency Motion to Enforce; (3) Requiring Thomas Swarek to Produce Certain Documents; (4) Granting Unfettered Access to Certain Locations Owned by or Affiliated with Thomas Swarek or His Entities; and (5) for Related Relief* ("**Order on Motion to Enforce**") [Docket No. 260].[8]

8.     The Order on Motion to Enforce, among other things, left the record open on the Motion to Enforce for a reset hearing to be determined by the Bankruptcy Court and required Swarek to provide the Escambia Trustee with documents and information in a number of specific categories.

9.     At a status conference on the Order on Motion to Enforce held on February 15, 2024, the Escambia Trustee reported cooperation by Swarek in the production of documents and information, although the production process is not yet complete, a rescheduled status conference has been set for February 27, 2024. [Docket No. 284].

---

[8] The Escambia Trustee, however, reserves all rights with regards to the Motion to Enforce and any claims or causes of action available.

*Regulatory Matters*

10.     The Alabama Oil and Gas Board ("**AOGB**") scheduled a hearing (the "**AOGB Hearing**") for February 8, 2024, on a *sua sponte* AOGB motion in connection with a pre-petition order that the AOGB had issued against Escambia Operating. The Escambia Trustee and his legal counsel appeared at the AOGB Hearing and provided the AOGB with an overview of the chapter 11 process and various courses of action available to the Escambia Trustee through the bankruptcy proceeding, status of various legal proceedings involving the Escambia Debtors, and the current operational status and challenges. Satisfied with the Escambia Trustee's explanations, the AOGB dismissed its pending motion.

11.     The AOGB also permitted royalty interest owners to ask questions at the AOGB Hearing. Of the royalty owners who asked questions, many reported, among other things, that they had never been advised of the Escambia Debtors' Cases and had not received a Form 1099-MISC or that the Form 1099-MISC was inconsistent with prior years' Form 1099-MISC.[9]

12.     With regard to the Form 1099-MISC issues, any royalties paid to interest holders in 2023 must be reported to the Internal Revenue Service (the **"IRS"**). Ordinarily, these reports are due by February 28th if filed by paper or March 31st if filed electronically. Extensions may be requested prior to the filing due date. The Escambia Trustee is in the process of deciding whether to request an extension based on incomplete and sometimes conflicting information available to him. In fact, one reason for filing the Motion to Enforce on an expedited basis was to seek the Bankruptcy Court's assistance in obtaining accurate information. Swarek has recently provided updated Form 1099-MISC information to the Escambia Trustee, and that information is being

---

[9] Many of the same issues have been reported to the Escambia Trustee and his advisors from royalty owners not in attendance at the AOGB Hearing.

#102065292v7

evaluated. To the extent the information is insufficient, the Escambia Trustee—in the diligent exercise of his duties—will memorialize the specific records that are believed to be missing, any suspected reasons for the deficiency, and the person or persons responsible for these deficiencies and, if necessary, may seek further Bankruptcy Court intervention. The Escambia Trustee has moved to employ Matthews, Cutrer & Lindsay, P.A. (**"MCL"**) [Docket No. 288] to prepare Forms 1099-MISC or to request an extension with the IRS if an extension is necessary.

13.     In response to concerns raised by royalty owners regarding lack of notice, the Escambia Trustee provided his contact information to all parties who requested it. Additionally, the Escambia Trustee expects to file in the near future an application to retain a claims noticing agent that can not only receive and maintain a proof of claim docket, but that will also maintain case and docket information that royalty owners and others can access.

B.     **Affiliated Entities**

### *El Dorado Gas & Oil, Inc.* [10]

14.     On December 22, 2023, El Dorado Gas & Oil, Inc. (**"El Dorado"**),[11] an entity owned, controlled, and/or affiliated with Swarek, filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Bankruptcy Court (Case No. 23-51715) (the **"El Dorado Case"**).

---

[10] The Escambia Trustee hereby provides a summary update on the El Dorado Case and the Hugoton Case (as such terms are defined and further described below) solely for purposes of completeness. The Escambia Trustee defers to the duly-appointed chapter 11 trustee in these cases in characterizing any events described herein that relate to these cases. Citations to docket entries in the El Dorado Case are cited as "[El Dorado Docket No. _____]"; citations to docket entries in the Hugoton Case are cited as "[Hugoton Docket No. ___]".

[11] Substantial ambiguity remains at this time between El Dorado *Gas & Oil,* Inc. (the debtor in the El Dorado Case) (emphasis added) and a related Mississippi corporation with an almost identical name: El Dorado *Oil & Gas,* Inc. (emphasis added). Adding to the confusion, the voluntary petition filed in the El Dorado Case [El Dorado Docket No. 1] includes El Dorado *Oil & Gas,* Inc. (emphasis added) as an "other name" used in the last eight (8) years. Regardless of which "El Dorado" entity is in view, Swarek owns or controls them both.

#102065292v7

15.      On January 3, 2024, First Service Bank (**"FSB"**) filed *First Service Bank's Emergency Motion for Entry of an Order (I) Prohibiting the Use of Cash Collateral, or, in the Alternative, (II) to Provide for Adequate Protection as a Condition to Use of Cash Collateral* [El Dorado Docket No. 30] (the **"El Dorado Motion to Prohibit CC"**) in the El Dorado Case, and two days later, FSB filed *First Service Bank's Emergency Motion for Entry of an Order (I) Prohibiting the Use of Cash Collateral, or, in the Alternative, (II) to Provide for Adequate Protection as a Condition to Use of Cash Collateral* [Hugoton Docket No. 105] (together with the El Dorado Motion to Prohibit CC, the **"Motions to Prohibit CC"**) in the Hugoton Case.

16.      On January 5, 2024, El Dorado filed the *Emergency Motion for Approval of Interim and Final Use of Cash Collateral and Finding of Adequate Protection* [El Dorado Docket No. 46] (the **"Motion to Use CC"**) in the El Dorado Case.

17.      The Escambia Trustee subsequently filed the *Response to First Service Bank's Emergency Motion for Entry of an Order (I) Prohibiting the Use of Cash Collateral, or, in the Alternative, (II) to Provide for Adequate Protection as a Condition to Use Cash Collateral [El Dorado Docket No. 30]* [El Dorado Docket No. 61] and the *Limited Objection to Emergency Motion for Approval of Interim and Final Use of Cash Collateral and Finding of Adequate Protection [El Dorado Docket No. 46]* [El Dorado Docket No. 62] as a precaution and to preserve rights granted to the Escambia Estates prior to the filing of the El Dorado Case in at least $11,133,438.94 in funds removed from the Escambia Estates and used to purchase equipment, some in the name of El Dorado. Interim orders have been entered that preserve all rights, claims, and defenses of the Escambia Estates. [El Dorado Docket No. 94].

18.      On February 2, 2024, the Bankruptcy Court entered the Order approving the appointment of Dawn Ragan as the chapter 11 trustee of El Dorado. [El Dorado Docket No. 208].

7

### *Hugoton Operating Company, Inc.*

19.     On August 14, 2023, Hugoton Operating Company, Inc. ("**Hugoton**"), an entity owned, controlled, and/or affiliated with Swarek, filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Bankruptcy Court (Case No. 23-51139) (the "**Hugoton Case**"). The Escambia Trustee is investigating whether the Escambia Estates have any claims in the Hugoton Case.

20.     On January 22, 2024, the Bankruptcy Court entered the Order approving the appointment of Ms. Ragan as the chapter 11 trustee of the Hugoton Case [Hugoton Docket No. 196].

### *El Dorado and Hugoton*

21.     Since Ms. Ragan's appointment as Trustee in the El Dorado and Hugoton Cases, she and the Escambia Trustee have had discussions about ways to effectively share information. In fact, the Escambia Trustee has already shared with Ms. Ragan some of the information he has developed since he was appointed in October of 2023. While the Escambia Trustee, as well as Ms. Ragan, recognize that there are issues to be resolved among their respective bankruptcy estates, at this juncture a certain measure of cooperation is essential to minimize costs and maximize recoveries given the commingled nature of the various estate assets. The Escambia Trustee's advisors have coordinated visits with Ms. Ragan's advisors to inspect the various locations in which Swarek has stored the equipment he purchased. It is expected that these visits will assist the parties in developing a protocol for sale of the equipment and subsequent allocation of the sale proceeds.

#102065292v7

***Blue Diamond***

22.      On January 7, 2024, the Escambia Trustee filed the *Motion of Escambia Trustee to Direct the Appointment of a Blue Diamond Trustee* [Blue Diamond Docket No. 532] (the **"Blue Diamond Trustee Motion"**) asking the Bankruptcy Court to appoint a chapter 11 trustee under section 1104(a)(2) of the Bankruptcy Code. On February 15, 2024, Blue Diamond filed the *Response to Motion to Appointment of Chapter 11 Trustee* [Blue Diamond Docket No. 547] (the **"Response to Blue Diamond Trustee Motion"**). A hearing on the Blue Diamond Trustee Motion is set for February 28, 2024. [Blue Diamond Docket No. 533].

23.      The Escambia Trustee believes that having the three related entities—Escambia Asset, Escambia Operating, and Blue Diamond—under the supervision of a chapter 11 trustee is essential for reasons stated in the Blue Diamond Trustee Motion. Furthermore, while the Escambia Trustee recognizes that the UST for this region may have some reluctance to appoint the Escambia Trustee as trustee for Blue Diamond, there are no known assets available to pay a trustee commission.

24.      **If the UST chooses to appoint the Escambia Trustee as trustee for Blue Diamond, the Escambia Trustee is willing to <u>waive</u> any Blue Diamond trustee fees and expenses that he would otherwise be entitled to as chapter 11 trustee for Blue Diamond. Such willingness indicates how strongly the Escambia Trustee considers the necessity of a trustee for Blue Diamond.**

## UPDATE: OPERATIONS

### A.    Status of Issues in First Status Report

25.      As explained in the First Status Report, the Escambia Trustee took over control of the Gas Processing Facilities. The Escambia Trustee, MACCO, and (where appropriate) Jones Walker focused on four immediate areas of concern: (i) enhancing deficient health and safety

9

precautions pertaining to Escambia Operating's Gas Processing Facilities, (ii) curing operational deficiencies for purposes of preserving the value of the Escambia Estates, (iii) implementing necessary financial and accounting controls, and (iv) investigating potential claims belonging to the Escambia Estates.

### i. Health and Safety Precautions

26. Notwithstanding the ongoing challenges the Escambia Trustee faces, the Escambia Trustee and his non-attorney advisors continue to focus on improving the operations of the Gas Processing Facilities, with a particular focus on operating the Gas Processing Facilities in a safe and commercial manner.

27. As set forth in the Motion to Enforce, the Escambia Trustee recently discovered that Swarek had allowed insurance coverage on the Escambia Debtors' vehicles (the **"Vehicles"**) to lapse on September 30, 2023, prior to the Escambia Trustee's appointment. Following the Escambia Trustee's appointment, the Escambia Trustee has been trying to obtain replacement insurance coverage but has had difficulty obtaining replacement coverage for the reasons set forth in the Motion to Enforce. The Escambia Trustee continues his efforts to obtain insurance coverage on the Vehicles.

### ii. Operational Deficiencies

28. The First Status Report revealed that, under Swarek's management, the Escambia Debtors' production and well maintenance management had been neglected, which resulted in non-product time and dependency of third-party gas buyback. To remedy the field operations, the Escambia Trustee:

>   a.   immediately executed workover operations for wells: IPC-2-11 increasing production from 200-600 Mcf to 1700-1750 Mcf per day; and

b.      is currently performing workover operations on the Booth 36-14 (the **"Workover"**) after a material loss in production output. Estimated total investment was, at its outset judged to be in the \$750,000-\$1,200,000 range.

29.      The Booth 36-14 Workover was highly difficult at its outset due to both the highly corrosive nature of H2S gas and the prior years of poor downhole well maintenance. These challenges and complexities were compounded at the beginning of the year by third-party service companies who were engaged to provide equipment and services to the Escambia Estates for the Workover, when they allowed approximately 13,000 feet of production pipe to free fall into the well bore due to operator, mechanical, equipment error or a combination thereof. This has necessitated an intense oil and gas "fishing" operation (a **"Fishing Operation"**) [12] to remove the pipe. An oil and gas Fishing Operation is highly technical in both mechanical and operational terms and dependent upon the operator's (i.e., "fisherman's") experience. The operation literally fishes the damaged, sometimes corkscrewed pipe, pieces of pipe, damaged downhole well equipment, and related detritus out of the well bore while maintaining safe well conditions. Fishing Operations identify (i) the nature and extent of the damage, (ii) the condition of the well bore itself, (iii) the likelihood of a successful "fishing operation," and (iv) related issues, that if successful, would restore the well to its prior state or better. As of the date of this report, the Fishing Operation

---

[12] The Escambia Trustee, together with MACCO and a contracted oil and gas consultant immediately commenced an investigation into the proximate causes of the error, their costs, and the parties financially responsible. Fishing Operations can be extended in terms of the length of time to complete and in higher costs. It is the Escambia Trustee's position the parties responsible for the error necessitating the Fishing Operation, will be held financially responsible for both the added workover/fishing cots as well as any permanent well damage that may be determined.

#102065292v7

has yielded material recoveries and has had some success, and the Escambia Trustee remains cautiously optimistic.

30.     The Ezell Unit 29-5, was a producing oil well, where under Swarek's management, a failed workover was undertaken utilizing his contractor/employees and his related entity owned workover rig. This workover effort failed spectacularly. Operator error, poor equipment maintenance, and/or mechanical error led to dropping pipe and equipment into the Ezell's well bore thus likely permanently effecting its ability to produce.[13] Further, to ostensibly "hold the lease"—after the failed workover effort—Swarek abandoned the site with his workover rig rigged up over the well head with pipe left standing in the derrick with no clear plan of action prior to the appointment of the Escambia Trustee. This unsound, unsafe condition has been remedied. While this action was highly inappropriate and dangerous, the Escambia Trustee directed and took control of the site, had the mechanical viability of the workover rig to operate assessed, developed a safe rig down plan, and—using a combination of the Escambia Estates' and contract personnel—successfully started the rig-up, laid down the pipe standing in the derrick, rigged down, secured the well head equipment, and moved all equipment from the well head to a safe location on site. The hard costs to undertake this necessary action was approximately $12,236.00 which does not include the Escambia Trustee's, his advisors, the Escambia Estates' employees, or the Escambia Estates' contractor time to review and assess the issue(s).

31.     The Escambia Trustee and his legal counsel are still in the process of determining how the fines, penalties, and abatements caused by prior mismanagement and oversight of applicable regulatory provisions should be handled in the contexts of the Escambia Debtors' Cases.

---

[13] The Ezell 29-5 would require a Fishing Operation as referenced above. It is unclear whether this action would be either feasible or economical based on the Escambia Trustee's initial analysis of the Ezell well.

12

Such assessment includes certain fees incurred on October 31, 2023, pursuant to Title V of the Clean Air Act in an amount in excess of $300,000.00, with a 3% monthly interest accruing.

       *iii.     Financial and Accounting Controls*

32.     The Escambia Trustee's initial investigation revealed that the Escambia Debtors' corporate and accounting responsibilities were delegated to a distinct team located in Gulfport, Mississippi who were employed by and also oversaw tasks for other entities owned by Swarek.

33.     The Escambia Trustee and his non-attorney advisors discovered inadequacies in accounting practices and record keeping processes in connection with the Escambia Debtors. Specific issues included: (1) the termination of various software programs for royalty and joint interest billing (**"JIB"**) calculations; (2) manual tracking of Accounts Payable in Excel; and (3) a combination of cash and accrual basis accounting methods leading to financial statement discrepancies.

34.     As previously stated in the First Status Report, the Escambia Trustee and his non-attorney advisors are still in the process of determining the total amount outstanding owed to such working interest owners, royalty owners, and other parties in interest. The investigation into these outstanding interests is ongoing. Effective December 12, 2023, the Escambia Trustee retained Melissa Temple as a consultant to assist with the investigation. [*See Order Authorizing the Chapter 11 Trustee to Retain Melissa Temple as Consultant Pursuant to 11 U.S.C. § 363*, Docket No. 281].

    **B.     Ongoing Operational Matters**

35.     Operating the Escambia field and gas plant continues to be an everyday challenge for the Escambia Trustee and his financial advisors, MACCO. The following summarized list reflects, a small sampling, of the nature, type and costs related to on-going plant and field operations:

| Description | Amount |
|---|---|
| Seacor - Escambia Operating Company Repairs for Fire Hydrants/Monitors/Hose Reels | $94,000.00 |
| Slickline - Well Maintenance | $8,972.00 |
| Olds Filtration - Filter and Filter Housings for Saltwater Disposal Wells | $18,650.00 |
| Al Hill's Boiler Sales & Repair – Repair refractory damage around boiler burner | $2,900.00 |
| ZEE Company - Boiler Feedwater Chemicals | $26,795.00 |
| Repair and replace DGA pumps | $25,000.00 |

WHEREFORE, the Escambia Trustee submits this Second Status Report.


*[Continues on Next Page]*

14

#102065292v7

Dated: February 26, 2024                    Respectfully submitted,

                                            */s/ Jeffrey R. Barber*
                                            Jeffrey R. Barber (Mississippi Bar No. 1982)
                                            JONES WALKER LLP
                                            3100 North State Street, Suite 300
                                            Jackson, Mississippi 39216
                                            Tel: 601-949-4765
                                            Fax: 601-949-4804
                                            Email: jbarber@joneswalker.com

                                            -and-

                                            Joseph E. Bain (Texas Bar No. 24085187)
                                            *Admitted Pro Hac Vice*
                                            Olivia K. Greenberg (Texas Bar No. 24127683)
                                            *Admitted Pro Hac Vice*
                                            Elizabeth De Leon (Texas Bar No. 24127215)
                                            *Admitted Pro Hac Vice*
                                            JONES WALKER LLP
                                            811 Main Street, Suite 2900
                                            Houston, Texas 77002
                                            Tel: 713-437-1800
                                            Fax: 713-437-1810
                                            Email: jbain@joneswalker.com
                                                   ogreenberg@joneswalker.com
                                                   edeleon@joneswalker.com


                                            ***Counsel for Drew McManigle, Chapter 11 Trustee
                                            of the Estates of Escambia Operating Company,
                                            LLC and Escambia Asset Company, LLC***

15

#102065292v7

## CERTIFICATE OF SERVICE

I certify that on February 26, 2024, I caused a copy of the foregoing document to be served by electronic transmission to all registered CM/ECF users appearing in this case.

*/s/ Jeffrey R. Barber*

#102065292v7