**IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI SOUTHERN DIVISION**

IN RE:                                                                    CASE NO.  23-50491-JAW

ESCAMBIA OPERATING COMPANY, LLC, *et al.*,[1]              CHAPTER 7

DEBTORS.                                                          (Joint Administration)

**SHEEHAN'S RESPONSE TO UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO SECOND AMENDED FIRST APPLICATIONS FOR COMPENSATION FOR THE ATTORNEY FOR THE DEBTORS BLUE DIAMOND ENERGY, LLC, ESCAMBIA OPERATING COMPANY, LLC AND ESCAMBIA ASSET COMPANY, LLC [DKT. # 917, # 919, # 920, # 921[2]]**

**COMES NOW** Patrick A. Sheehan and Sheehan & Ramsey, PLLC [hereinafter "**Sheehan & Ramsey**" or "**Sheehan**"], counsel to the Debtors in these three (3) jointly administered cases, recently converted to Chapter 7, and hereby submits this response (the "**Response**") to *United States Trustee's Omnibus Objection to Second Amended First Application for Compensation for the Attorney for the Debtors Blue Diamond Energy, Inc., Escambia Operating Company, LLC and Escambia Asset Company, LLC* (the "**Objection**")[Dkt. # 1075].   In Support of this Response, Sheehan provides:

**INTRODUCTION**

As this Court suggested from the bench and the United States Trustee articulated in the Objection, Sheehan did not comply with reporting requests in Title 11 U.S.C. §329 and Bankruptcy Rule 2016. Sheehan admits oversights and accepts responsibility.[3]  As an explanation of the reason

---

[1] The debtors (collectively "**Debtors**" or "**Escambia Debtors**" or "**Escambia**") in each of the jointly administered bankruptcy cases and the last four digits of each debtor's federal tax identification number are as follows: Case No. 23-50491-JAW, Escambia Operating Company, LLC (2190) ("**EOC**"); Case No. 23-50492-JAW, Escambia Asset Company, LLC (2000) ("**EAC**"); Case No. 24-50490-JAW, Blue Diamond Energy, Inc., (2190) ("**Blue Diamonds**").
[2] Exhibit 1:  Dkt. # 917; Exhibit 2:  Dkt. # 919; Exhibit 3:  Dkt. # 920; Exhibit 4:  Dkt. # 921.
[3] "Unless otherwise noted, all references to 'Rules' or 'Bankruptcy Rules' are to the Federal Rules of Bankruptcy Procedure.  Unless otherwise noted, all references are to Title 11, U.S.C. et seq." *In re Castillo*, 508 B.R. 1 n. 1, n.2 (Bankr. W.D. Tex. 2014).

for non-compliance, Sheehan states that although he acted as debtors' counsel in previous Chapter 11 cases, he was not sufficiently familiar with the requirements of § 329 and Rule 2016 for reporting payments within fourteen (14) days along with the source of all payments.  He had not previously encountered a situation where a third-party non-debtor would pay fees and expenses for representing the debtor.  He was under the mistaken impression that he could accept payments from third party non-debtors and not report those payments until filing fee applications under § 329, § 330, and Rule 2016.  In each instance of a third-party non-debtor payment Sheehan disclosed the fact of the payment in these cases in fee applications that were filed prior to any party in interest or the Court bringing the reporting requirements to his attention.[4]  There was no attempt to conceal any payment, and in each case the amounts of the third-party payments were credited to the amounts billed for time and expenses.

Regarding assertions that Sheehan had an allegedly disqualifying conflict of interest in representing multiple debtors, he responds that while he may have had potential conflicts in interest, those potential conflicts did not become actual conflicts.  The Fifth Circuit distinguishes between actual conflicts and potential and/or technical conflicts based on a number of criteria stated in the case law and articulated in the "Argument" section of this Response.  Alternatively, if there was or is a technical conflict, under §327, according to the best interest of the debtor factors, and the totality of the circumstance factors, this Court has discretion to allow Sheehan's representation of multiple debtors, without penalty.  Specifically, in the absence of scienter, fraud, contumacious conduct, intentional, willful, egregious, malicious misconduct, or pecuniary prejudice, Sheehan's unbiased actions aided the Escambia debtors, did not prefer one debtor over

---

[4] Exhibit 5:  Dates regarding Escambia receipt of payment, disclosure dates, and amounts.

another, and placed debtors' interests before his own. Sheehan's representation benefited the Escambia debtors and they suffered no injury because of his involvement.

Sheehan does not generally deny the factual allegations of Paragraph 1 through 3 of the Objection. Most of that information seems derived from Sheehan's amended fee applications and the appendices thereto [Dkt. 917, 919, 920 and 921]; and is an accurate reflection of the Court record. In the Objection, the UST posed various questions and requests for further information. These questions and requests were answered in material provided to UST after he filed the Objection.[5]

The allegations of ¶ 4 and ¶ 5 of the Objection are responded to as follows:

a. The UST objected to paralegal time billed to Blue Diamond for amending schedules during June 18 – 20, 2023, and stated the amended schedules for Blue Diamond were filed on June 17, 2023. Research into the raw billing data shows that charges objected to were for EOC and due to a clerical error, they appeared on the Blue Diamond invoice. The Amended Schedules in the EOC case were filed on June 20, 2023 (Blue-D Dk. 446), after the date work was performed.

b. The UST objected to time for a paralegal reviewing and researching Mallard Exploration Company on June 27 – 29, 2023, as <u>not</u> being beneficial to the estate. This information was necessary to prepare the joint disclosure statement for the three (3) Escambia Debtors, filed on October 2, 2023 (Blue D. Dk. 446), specifically, Article III, General Information and Background, pp. 7-14. Also, the Debtors were threatened with litigation regarding payment of oil and gas production proceeds to interest owners – which involves Joint Operating

---

[5] Exhibit 6: Suppl. to Ex. 11-04162026_UST QUESTIONS IN OMNIBUS OBJECTION – EOC, [EOC Dkt. 1075].

Agreements for various wells and a Construction and Operating Agreement for the BEC Refinery.  Those documents originated with Exxon decades ago and Grizzly did not provide these said documents when Blue Diamond purchased EOC and EAC in 2021.

c.  At ¶ 4.c, the UST objected that it appears that travel time was billed at full rate on June 16, 2023.  One hour of travel should have appeared in a separate entry. This entry should be reduced to 2 hours

d.  At ¶ 4.d, the UST objected that it appears that travel time for June 16, 2023 was billed at the full hourly rate.  The one hour of travel time included in the time entry should have appeared in a separate entry.  This entry should be reduced to 2 hours @ $350 for an amount of $700; and a separate entry for travel -  1 hour at $175 added.

e.  At ¶ 4.e, the UST objected that it appears the time entry for July 11, 2023, on Dkt. 921, p. 8 of 60 appears to bill travel at the full hourly rate.  This should have been billed @ $175/hr.  Reduce Fee App. By $175.00.

f.  At ¶ 4.f, the UST objected that duplicate entries appear on p.  8 of Dkt. 921 for a paralegal. Delete one of the duplicate entries and reduce application by $60.00.

g.  At ¶ 4.g, the UST objected that 2.5 hours were billed by a paralegal to draft a notice, which seems excessive.   This was a typographical error.  This should have been .5 hour instead of 2.5.  Reduce fee application by $300.

h.  At ¶ 4.h, the UST objected that an expense of $118.89 for sending documents to Martindale Consultants, Inc. via Federal Express should not be approved

because the Court did not approve Martindale's employment. This invoice should be reduced by $111.89.

i.  At ¶ 5, if the Court finds a conflict, as elucidated herein:  (a)  it is a "technical conflict" that does not disqualify Sheehan's representation; and, (b) the Court can exercise equitable discretion to set aside a technical conflict based on the totality of circumstances in the debtors' best interest.

### SALIENT FACTS AND PROCEDURAL HISTORY

In April 2023, the three (3) debtors, owned and/or controlled by Tom Swarek, filed Chapter 11 petitions due to interruptions in production of oil and gas in the Big Escambia Creek field in Escambia County, Alabama, to protect themselves and their creditors from the effects of multiple lawsuits.  The three (3) jointly administered cases proceeded toward liquidation, and following the sale of the wells and refinery in the Big Escambia Creek field the cases were converted to Chapter 7 on February 12, 2026, on Motion by the Chapter 11 Trustee.[6]

The remaining relevant facts are incorporated by reference in the exhibits attached hereto and this Court's docket for the cases referenced on page one, footnote one.

---

[6] EOC Dkt. #  1004.

## ARGUMENT

I.  **UNDER 11 U.S.C. § 327(a)(c), SHEEHAN HAS NO DISQUALIFYING CONFLICT OF INTEREST, ONLY A POTENTIAL CONFLICT, OR A "TECHNICAL CONFLICT" THAT THIS COURT MAY EQUITABLY SET ASIDE AND ALLOW SHEEHAN TO CONTINUE REPRESENTATION AND RECEIVE PAYMENT BECAUSE OF EQUITABLE PRINCIPLES IN ESCAMBIA'S BEST INTERESTS AND THE TOTALITY OF CIRCUMSTANCES.**

Section 327 governs when one attorney may represent multiple debtors without a disqualifying conflict. Under § 327(a)(c), contemporaneous valid representation of multiple debtors encapsulates identifying factual considerations beyond a semantic "conflict of interest." Based on § 327(a), one attorney may simultaneously represent multiple debtors when: (1) they do not hold or represent an interest adverse to the estate; and, (2) are disinterested.[7] Particularly, permissible multiple debtor representation hinges on § 327(a) findings of **no adverse interests,**[8] **disinterestedness**,[9] **nor** § 327(c) **disqualification arising from conflict of interest**.[10]

---

[7] *In re SBMC Healthcare*, LLC, 473 B.R. 871, 877 (Bankr. S.D. Tex. 2012)(citations omitted)(defining and analyzing § 327(a)); *In re Age Ref*., Inc., 447 B.R. 786, 805 (Bankr. W.D. Tex. 2011)(citations omitted)(analyzing § 327(a) and 11 U.SC. § 101(14), stating "disinterested" has been interpreted to, ". . . implicate only the personal interests of the professional sough to be retained . . . 'not [persons] having a claim in a representative capacity.'"); contra *In re Quality Beverage Co., Inc*., 216 B.R. 592, 595 (Bankr. S.D. Tex. 1995)(citations omitted)(A preclusive interest adverse to the estate when there is an economic interest lowering the value of the bankruptcy estate, equals actual or potential dispute from a rival estate, or bias.) and *In re Red Lion, Inc.*, 166 B.R. 296, 298 (Bankr. S.D. Tex. 1994)(citations omitted)(citing cases outside the 5th Cir. with limiting views of contemporaneous multiple debtor representation).

[8] 11 U.S.C. § 327(a); *In re W. Delta Oil Co., Inc.*, 432 F.3d 347, 356 (5th Cir. 2005)(citations omitted)(explaining Courts analyze adverse interest with, ". . . eye to the specific facts of each case . . ." on a case by case basis); *In re Howell*, 148 B.R. 269, 270-71 (Bankr. S.D. Tex. 1992), (addressing § 327(a) adverse interests and disinterestedness – an interested attorney, one who has interest adverse to the estate, and a § 328(c) disqualifying conflict may be partially or wholly denied an application for compensation, but ". . . dual representation of related parties in the corporate setting is not a per se actual conflict . . ."); *In re Age Ref., Inc*., 447 B.R. 786, 793, 802-06 (Bankr. W.D. Tex. 2011)(citations omitted)(stating § 327(a) speculation and potential conflict insufficient for disqualification; under § 327(a)(c) no interested materially adverse conflict imputed to firm who represented Trustee and Creditor Committee).

[9] *In re Age Ref., Inc.*, 447 B.R. 786, 801 (Bankr. W.D. Tex. 2011)(per § 327(a), "Trustee may hire only those professionals who 1) do 'not hold or represent an interest adverse to the estate,' and 2) are 'disinterested.'"); *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 747-51 (Bankr. N.D. Tex. 1988)(explaining per § 327(a)(c) preclusive adverse interest and conflicts of interest when representing a debtor's principle, affiliates, and debtors with a plan designed to benefit debtor's shareholders displaying opposite economic motivations and incentives); *In re Glob. Marine, Inc.*, 108 B.R. 998, 1001-06 (Bankr. S.D. Tex. 1987)(citations omitted)(per § 327(c), judge discretion to allocate compensation)

[10] *In re Howell*, 148 B.R. 269, 271 (Bankr. S.D. Tex. 1992)(per § 327(a)(c) and discussing *In re Glob. Marine*, Inc., 108 B.R. 998 (Bankr. S.D. Tex. 1987), attorney's dual representation of controlled entity and its controlling entity is not an actual conflict. *Id*. at 1001–03. No prohibitive conflict for attorney to represent a parent and subsidiary during intercompany creditor claim because representing the intercompany claim did not create a disabling actual conflict between estates. *Id*. at 1006. Contra *Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 754 (Bankr. N.D. Tex. 1988).

### a. Under 11 U.S.C. § 327(a)(c), Sheehan could and can validly continue representing the Escambia debtors.

Sheehan's representation of the Escambia debtors was and is reasonable, necessary, and in the debtors' best interests based on § 327 and the totality of circumstances because of the complex interwoven intricacies amongst Tom Swarek and the Escambia debtors. Unlike other cases with multiple debtor representation, Tom Swarek owns or controls all the Escambia debtors. Further, Sheehan representing the Escambia debtors is not antagonistic to the estates and benefits their interests. Sheehan is also aware of his ongoing duty to apprise the Court if a disqualifying conflict arise and that his failure to inform may result in disgorgement and/or other appropriate sanctions.[11] The Fifth Circuit interprets § 327(a)(c), to authorize representation when an actual conflict of interest can be set aside as only a "technical conflict."[12]

### i. Under 11 U.S.C. § 327(a), Sheehan is not cloaked with a preclusive adverse interests nor is he interested in such way to present a prohibitive conflict for past or continued representation of Escambia.

Title 11 U.S.C. § 327(a) is bifurcated into: (1) interests adverse to the estate; and, (2) disinterestedness:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys . . . that **do not hold or represent an interest adverse to the estate**, and that are **disinterested persons**, to represent or assist the trustee in carrying out the trustee's duties . . . 11 U.S.C. § 327(a). (emphasis added).

---

[11] See *In re C & C Demo, Inc.*, 273 B.R. 502, 505-09 (Bankr. E.D. Tex. 2001)(finding a violation of 2014 and § 327 where one firm concealed that on the same day they filed a Chapter 11 and Chapter 13 representing Equity Security Holders, as owners and shareholders of the debtor corporation who were parties in interest estate to the Chapter 11 bankruptcy that should have been disclosed.).

[12] *In re Glob. Marine, Inc.*, 108 B.R. 998, 1001-07 (Bankr. S.D. Tex. 1987)(citations omitted) actual conflict prohibiting one attorney's representation of multiple debtors occurs, ". . . whenever counsel for a debtor corporation has any agreement, express or implied, with management or a director of the debtor, or with a shareholder, or with any control party, to protect the interest of that party, counsel holds a conflict. That conflict is not potential, it is actual, and it arises the date that representation commences." Contra *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 754 (Bankr. N.D. Tex. 1988)(citations omitted)(narrow limiting perspective of denying multiple debtor representation).

In the case *sub judice*, Sheehan did not and does not hold or represent an **<u>interest adverse</u>** to the Escambia Debtors nor is he interested in any way that creates a prohibitive conflict. ". . . [M]ost of the courts faced with alleged potential conflict of interest or potential wrongdoing hold that 'potential conflicts of interest do not warrant the removal of a[n] [attorney]' in the absence of 'fraud and actual injury'."[13] "[N]o clear rule exists to per se prohibit the representation by the same attorney of a debtor-in-possession corporation, as well as its sole or majority shareholder who also happens to be a debtor-in-possession."[14] Similarly, there is no *per se* adverse interest or interestedness causing an actual conflict of interest in an intercompany claim between debtors, a subsidiary, and parent corporation, or corporate parent and its bankrupt partially owned subsidiaries in conjuncture with intercompany claims.[15] Courts within the Fifth Circuit define an interest adverse aka "adverse interest" a.k.a. "material adversity" to a debtor and/or the estate as:

> (1) to possess or assert any **economic interest** that would tend to **lessen the value** of the bankruptcy estate or that would create either an **actual** or **potential dispute** in which the **estate is a rival claimant**;[16] **<u>or</u>**
> (2) to possess a **predisposition under circumstances** that render such a **bias against the estate**."[17] (emphasis added).

---

[13] *In re Hartley*, 50 B.R. 852, 858 (Bankr. N.D. Ohio 1985)(application of law to trustee relevant to debtor counsel) See also *In re Paolino*, 80 B.R. 341, 345 (Bankr. E.D. Pa. 1987)(questioning *Hartley* and opining basis for disqualification starts on the date counsel becomes affiliated with the client).

[14] *In re Huddleston*, 120 B.R. 399, 401-02 (Bankr. E.D. Tex. 1990)(holding in a Chapter 11, "The Court is convinced that determinations of impermissible conflicts of interest are to be made on a case-by-case basis and not on the basis of the relationship between the parties . . .").

[15] *In re Glob. Marine, Inc.*, 108 B.R. 998, 1005 (Bankr. S.D. Tex. 1987)(holding, in Ch. 11, after one Counsel's disclosure representing debtor corporation and its debtor subsidiaries, ". . . the adequate representation of both parties [and] the value of [Counsel's] services has not been challenged nor has [Creditor] been able to point out any specific demonstrable or negative prejudicial effect that has resulted from representing [Debtors].).

[16] "'Adverse interests' . . . used in its broad commercial and economic sense . . . also includes the attorney's economic and personal interests." *In re Red Lion, Inc*., 166 B.R. 296, 298 (Bankr. S.D. Tex. 1994)(restating rule and denying one attorney dual representation of Debtor's principals and Debtor corporation that owned a burned down uninsured restaurant when the attorney represented Debtor's principles and Debtor subsequently requested defense against a declaratory judgment and a finding of liability regarding who was responsible for maintaining insurance after the uninsured restaurant burned since each entity could file claims against each other about who was liable for being uninsured. Distinguishable from other 5th Circuit cases and wholly relying on cases outside the 5th Circuit resulted in Court disallowing representation because of a potential conflict.).

[17] *In re Age Ref*., Inc., 447 B.R. 786, 802 (Bankr. W.D. Tex. 2011)(citations omitted); *In re Quality Beverage Co., Inc.*, 216 B.R. 592, 595 (Bankr. S.D. Tex. 1995); *In re Red Lion, Inc.*, 166 B.R. 296, 298 (Bankr. S.D. Tex. 1994).

Whether **economic** considerations **lessen the value** of an estate and develop an **actual, not potential conflict**, or **predisposed bias** causing a prohibitive **adverse interest** is case specific.[18] **Actual conflict of interest** is defined in Fifth Circuit, aligned with the First and Third, and agreeing with the Eleventh Circuit, that ". . . actual conflict of interest exists when dual representation forces an attorney to advance two diametrically opposed goals and deprives each represented party of 'unbiased, independent assessments of the available and outstanding claims.'"[19]

All assets of the Escambia Debtors were in Alabama, and the only potential conflict Sheehan had at the time was that he represented other Escambia Debtors. Mr. Swarek owned or controlled other entities whose assets were in Texas.[20] Unlike cases finding preclusive conflicts, at no time did Sheehan individually represent Mr. Swarek. Under § 101(2), the Escambia Debtors are affiliates of the other Swarek companies which could have resulted in a conflict in interest if Sheehan held or represented an interest adverse to an estate, if he was interested, or called on to make decisions affecting estate(s) value.[21] A potential conflict did not ripen into an actual conflict as there were no common claims or assets. Thus, Sheehan remained disinterested, negated, and negates disqualification from a conflict.

There was never any connection between Bluestone and the Escambia companies for the same rational. All of Bluestone's assets were oil and gas interests in Texas, and the Escambia

---

[18] *In re HML Enters., LLC*, No. 16-90030, No. 16-90033, 2016 Bankr. LEXIS 3693, *14-24 (Bankr. E.D. Tex. Oct 12, 2016)(citation omitted); See 1 Collier on Bankruptcy P 8.03 (16th 2025) Conflicts with the Bankruptcy Estate.

[19] *Id*.; See *In re Howell*, 148 B.R. 269, 270-73 (Bankr. S.D. Tex. 1992).

[20] Sheehan was one of the counsel of record for Blue Diamond Energy, Inc. (CH 11 No. 23-50490-JAW), Escambia Operating Company, LLC (CH 11 No. 23-50491-JAW), and Escambia Asset Company, LLC (CH 11 No. 23-50492-JAW) ("The Escambia Companies").

[21] 11 U.S.C. § 101(2) "The term 'affiliate' means-(A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities-(i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote."

Company's assets were oil and gas interests, a refinery, and personal property, all located in Alabama.  Between the Escambia Debtors and/or Sheehan, there were no rival diametrically conflicting commercial or economic interests predisposing Escambia Debtors and/or Sheehan to bias, pecuniary prejudice, fraud, contumacious conduct, nor was there scienter or egregious misconduct that would lessen the value of one the benefit of another.

Only after Dawn Ragan, the El Dorado Gas and Oil, Inc.[22] ("**EDGO**"), Chapter 11 Trustee, was appointed to be a director and managing member of World Aircraft, Inc.[23], and began inventorying assets, was it discovered that World Aircraft Inc. and EOC both claimed some of the personal property assets.  Via a joint motion to compromise pursuant to Rule 9019, Ms. Ragan, the Court appointed representative of World Aircraft Inc., and Drew McManigle, Chapter 11 Trustee for the Escambia Debtors, handled the mutual claims matter, without Sheehan's involvement.[24]

There are no allegations that Sheehan holds or held any interest naturally adverse to the estate(s) or any creditor.  There are hundreds of creditors, many of which are represented by counsel, in these cases and none have raised an issue.  Neither the Chapter 11 Trustee for the Escambia case or the EDGO cases objected or raised any issue in this regard.[25]  Sheehan was not presented with a situation where his multiple representation presented two axiomatic opposed goals so as to deprive any party of unbiased independent assessment or representation.

Under § 327(a), in the case *sub judice*, Sheehan was **<u>disinterested</u>** when he represented all Escambia Debtors and remains disinterested such that it is allowable for him to continue representing the Escambia Debtors without penalty or sanctions.  The bankruptcy code mandates

---

[22] El Dorado Gas and Oil, Inc. Chapter 11 No. 23-51715-JAW.
[23] See *Agreed Order Authorizing Dawn Ragan to Act as Director and Office for the Subsidiaries* [etc.], WAC Dkt. 139, entered May 24, 2024.
[24] EOC Dkt. 518, filed September 30, 2024.
[25] On March 11, 2016, Dawn Ragan filed a Limited Objection (EDGKO Dkt. 1755), but did not articulate a conflict of interest.  In the Dkt. 1755 limited objection, she did not object to the overall compensation of the Sheehan & Ramsey firm per se.  Conversely, the Trustee submitted that the firm had provided valuable and beneficial services.

**disinterest**.   11 U.S.C.A. § 101(14).   Disinterestedness means an attorney is, ". . . free of any conflicting interest which might, in the view of the Bankruptcy Court, affect the performance of their services or which might impair the high degree of impartiality and detached judgment expected of them during the administration of the case."[26]   A disinterested person is one who ". . . does not have an interest materially adverse to the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to . . . the debtor . . . or for any other reason."[27]   Regarding adverse economic interests and personal interests, the Court utilizes non-exhaustive **totality of the circumstances**[28] factors to identify a permissive or preclusive interest.   Courts have also ". . . held that the relevant question in determining whether an attorney is 'disinterested,' for the purpose of employment by the trustee, is whether the attorney has a meaningful incentive to act contrary to the **best interest** of the estate and its creditors or the reasonable perception of such an incentive . . ."[29]

Consistent with § 101(14), Sheehan is disinterested.   In the performance of services for the Escambia Debtors, he never entered into any conduct that caused partiality during his administration amongst the Escambia Debtors, their creditors, an equity security holder, or party in interest.   While representing the Escambia Debtors, Sheehan subordinated his own interests to economically benefit the Escambia debtors.   Any presumed interest is rebuttable and under the Totality of Circumstances nothing more than a permissible interest to allow representation for the Escambia Debtors' best interests because he had and has no incentive to act contrary to their best interest.   Sheehan never had an interest adverse to the bankruptcy estate(s), has remained

---

[26] *In re Quality Beverage Co., Inc.*, 216 B.R. 592, 595 (Bankr. S.D. Tex. 1995)(citations omitted).
[27] *In re BH & P , Inc.*, 949 F.2d 1300, 1314 (3rd Cir. 1991)(citations omitted).
[28] *In re SBMC Healthcare*, LLC, 473 B.R. 871, 880-81 (Bankr. S.D. Tex. 2012)(totality of circumstances)(citations omitted).
[29] *Quality Beverage Co., Inc*., 216 B.R. 592, 595 (Bankr. S.D. Tex. 1995)(emphasis added)(citations omitted).

disinterested, and no creditor or chapter trustee raised such an issue in nearly three (3) years its cases were pending.

> ii. **According to 11 U.S.C. 327(c), Sheehan may represent the Escambia Debtors without disqualification because if there is a conflict of interest, it is only a technical conflict this Court is empowered to set aside for Escambia's best interests based on the totality of circumstances below.**

According to 11 U.S.C. § 327(c):

> (c) In a case under chapter 7, 12, or 11 of this title [11 USCS §§ 701 et seq., 1201 et seq., or 1101 et seq.], a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment <u>if there is an actual conflict of interest</u>  (Emphasis added)

"'[A]ttorneys may have conflicts which are technical and nondisqualifying', which typically occur where multiple business entities are controlled by a single entity or person."[30]  For example, prepetition debt between estates creates a disqualifying conflict, but where there is unity of ownership, i.e.:  Tom Swarek owning the Escambia Debtors, a legally disabling conflict dissolves and representation is permitted as replacement counsel is unreasonably and unnecessarily cumbersome.[31]  Several cases provide instructive comparisons.

> [D]ual representation of both a controlled entity and its controlling entity is not in and of itself an actual conflict . . . Instead, the existence of an actual conflict is a fact question. . . . The creditors in Global Marine argued that an intercompany claim existed between the subsidiary and its parent holding company; therefore, dual representation was not allowed under section 327(a). The . . . court disagreed, however, and upheld the dual representation because the intercompany claim did not create an actual conflict or legally-disabling conflict that would necessitate penalizing the law firm for representing both estates.[32]

---

[30] *In re Glob. Marine, Inc.*, 108 B.R. 998, 1002 (Bankr. S.D. Tex. 1987).
[31] *In re Glob. Marine, Inc.*, 108 B.R. 998, 1002-05 (Bankr. S.D. Tex. 1987).
[32] *In re Howell*, 148 B.R. 269, 271 (Bankr. S.D. Tex. 1992).

In *Roberts*, the law firm had filed two separate chapter 11 bankruptcy petitions. One petition was filed on behalf of Larry and Barbara Roberts; the other petition was filed on behalf of Roberts, Inc., the family plumbing and heating business. The law firm continued to represent both the individuals and their wholly-owned corporation and an uncontested reorganization plan was confirmed by the court . . . The law firm then applied to the bankruptcy court for payment of legal fees incurred in representing all of the debtors. No one objected, but the court, on its own motion, decided that the law firm's dual representation created a serious conflict of interest warranting denial of all costs and legal fees.[33]

On appeal, the district court held that dual representation does not always require 'a blanket denial of all legal fees.' . . . Instead, dual representation presents merely a potential conflict, which raises a question of fact rather than a per se rule of denial . . . The *Roberts* court based its conclusion on the economic realities of the situation and the 'unity of interest' existing between the Roberts and their family business . . . The bankrupt estates are already and obviously in financial distress; to always require (at least) two lawyers in the family business situation simply increases the financial burdens of the estates . . . The *Roberts* court adopted a flexible balancing test: Where the equities outweigh the need for attorney discipline for failure to disclose potential conflicts, the law does not require denial of fees and costs . . .[34]

The *Huddleston* court, [In re: Huddleston, 120 BR. 399 (E.D. Tex. 1990)] using the same type of reasoning as *Roberts*, decided that there was no per se prohibition against an attorney representing both a debtor-in-possession and its debtor-in-possession sole or majority shareholder . . . The court concluded that finding an impermissible conflict of interest in violation of section 327(a) requires a case-by-case evaluation. The *Huddleston* court then held that the attorney could undertake the dual representation because the close relationship between the two debtors favored joint administration, and, besides, no actual conflict of interest existed . . . The court . . . cautioned the attorney that fees would be denied (or disgorgement ordered) if the potential conflict apparently inherent in all dual representation situations escalated into an actual conflict.[35]

---

[33] *In re Howell*, 148 B.R. 269, 272 (Bankr. S.D. Tex. 1992) citing *In re Roberts*, 75 B.R. 402, 405-12 (D. Utah 1987).
[34] *In re Howell*, 148 B.R. 269, 272 (Bankr. S.D. Tex. 1992) citing *In re Roberts*, 75 B.R. 402 (D. Utah 1987).
[35] *In re Howell*, 148 B.R. 269, 272 (Bankr. S.D. Tex. 1992) citing *In re Huddleston*, 120 B.R. 399 (Bankr. E.D. Tex. 1990).

In the event this court finds a technical conflict; in the spirit of the *Howell* and *Roberts*, it is urged, in its discretion, to waive such conflict and find that the totality of circumstances and best interest of Escambia Debtors overrides any adverse effect of such conflict under equitable factors. Sheehan's services did not detrimentally effect or negatively impact the Escambia Debtors. Sheehan's services benefited the Escambia estates.

In the Escambia cases, Sheehan appeared in the cases about six (6) weeks after they were filed, filed amended schedules, attended a lengthy and contentious 341 meeting of creditors, and defended against the motion to appoint a Chapter 11 trustee. He continued to represent Blue Diamond after it was severed from the EOC and EAC joint administration. On October 2, 2023, Sheehan filed a Joint Disclosure Statement and proposed plan of reorganization for the three (3) jointly administered cases (Blue-D Dk. 446). **Note that when the Chapter 11 Trustee for the Escambia Debtors later filed his own joint disclosure statement, the background Section (pp. 7-14) was taken almost verbatim from Sheehan's disclosure statement.** In this Court's equitable discretion and based on equity, this Court has authority to compensate Sheehan, even if some monetary sanctions are warranted.

> **b. Under 11 U.S.C. § 327(d)(e), is in the best interests of the Escambia Debtors for Sheehan to have represented and continue representing them.**

Sections 327(d)(e) make an exception to § 327(a) whereby if Sheehan is found to be "interested," under § 327(d)(e) it was and is in Escambia's best interests for him to continue representation because of the complexity, depth and breadth of work, and preservation of finances.[36] Sections 327(d)(e) speaks to trustees acting in the debtor's best interest and authorizing an attorney act in the debtor's best interest is analogous to Sheehan representing multiple debtors.

---

[36] See *In re Interamericas, Ltd.*, 321 B.R. 830, 833 (Bankr. S.D. Tex. 2005)(citations omitted); See also *In re Edwards*, 510 B.R. 554, 60-62 (Bankr. S.D. Tex. 2014)(discussing Court discretion to apply *In re Interamericas, Ltd.*, best interest factors); See also *In re Gem Tire & Service Co.*, 117 B.R. 874, 878-81 (Bankr. S.D. Tex. 1990)(applicable to

Pursuant to § 327(d), case law defines the best interest factors as:

> . . . [I]nterest . . . compatible with the goals of bankruptcy law, that is, to maximize the value of the assets of the bankruptcy estate in the most cost efficient way for the benefit of those who own those assets.[37]
>
> 1. The qualifications of the members of the firm compared to the complexity of the case;
> 2. Whether the firm is regularly hired by others to handle similar litigation;
> 3. Whether the anticipated litigation predominantly involves issues of bankruptcy law with which the law firm has particularized expertise;
> 4. Whether the time commitment required to handle the case is consistent with the size of the firm and the balance of the firm's time commitments;
> 5. Whether only a nominal amount of work must be performed;
> 6. The availability of other qualified firms to handle the case;
> 7. The rates charged by the firm compared to the rates charged by other qualified firms;
> 8. Whether there will be material cost savings to the estate; and
> 9. Other case-specific factors.[38]

The best interest factors are applied as follows:

I.  Sheehan is experienced in Chapter 11 cases, qualified for the work accomplished prior to appointment of the Chapter 11 Trustee, and work the Trustee assigned to him. He had familiarity with the companies' structure, range and locations of their assets, and interfacing with previous sister companies – in and out of bankruptcy.

2 & 3.  Sheehan is regularly hired for Chapter 11 cases, and has expertise in bankruptcy

---

multiple debtor representing, holding, ". . . when a trustee seeks to employ his own law firm to perform services for a trustee or the estate, the best interest of the estate test of § 327(d) must be clearly demonstrated in the application. In other words, trustees must explain in sufficient detail the facts of the particular case so that the court can conclude that the proposed employment is in the best interest of the estate . . .").

[37] *In re Gem Tire & Service Co.*, 117 B.R. 874, 878-81 (Bankr. S.D. Tex. 1990)(citations omitted).

[38] *In re Interamericas, Ltd.*, 321 B.R. 830, 834 (Bankr. S.D. Tex. 2005)(citations omitted); See *also In re Edwards*, 510 B.R. 554, 560-62 (Bankr. S.D. Tex. 2014)(explaining the Court is not constrained to specific factors and has latitude to do what the Court opines is in the debtor's best interests).

matters.

4. From their inception, Sheehan committed nearly full time to representation for the instant cases.

5. Sheehan performed a substantial amount of work on the instant cases.

6. Nearly all of the qualified Chapter 11 debtors' lawyers in Mississippi were involved in Swarek related cases and rendered unavailable to represent the instant debtors.

7. Sheehan's rates were lower than large firm attorney rates for the same type of work.

8. Due to the complexity of the cases and their various interfaces, it would take any attorney new to the cases considerable time and cost to get up to speed. Thus, Sheehan's continued involvement was efficient and economical cost saving benefit for the Escambia estates.

9. Sheehan is experienced in oil and gas matters, having once been in-house counsel to an oil and gas exploration company, and most of those cases involve oil and gas law and bankruptcy law.

**c. The Totality of Circumstances is an exception to § 327(a)(c) and supports Sheehan representing the Escambia Debtors.**

Based on the Totality of Circumstances exception to § 327(a)(c), this Court has discretion to permit Sheehan to represent the EDGO debtors. The Totality of Circumstances factors include:

(1) Does the prepetition claim arise from an ordinary employment relationship with the debtor? . . . An affirmative answer favors approval of allowing the debtor to retain the law attorney and his law firm.

(2) Is the attorney who has applied to represent the estate also an insider of the debtor? . . . An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(3) Does the attorney who has applied to represent the estate hold a mortgage or other type of lien on property of the debtor to secure the prepetition claim? . . . An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law

firm.

(4) Even if the attorney holds no lien on property of the estate, does the attorney hold any other type of interest, direct or indirect, on property of the estate?  An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(5) Does the attorney who has applied to represent the estate not only hold a prepetition claim against the debtor, but also represents a third party creditor of the estate? . . . An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(6) Does the attorney who has applied to represent the estate have a loan outstanding that is owed to the debtor? . . . An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(7) Does the attorney who has applied to represent the estate have a direct prepetition claim for services rendered prior to the filing of the petition? . . . An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(8) Is the attorney who holds a prepetition claim and who has applied to represent the estate going to serve as general bankruptcy counsel?  An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(9) Is the attorney who holds a prepetition claim and who has applied to represent the estate going to serve as special bankruptcy counsel?  An affirmative answer favors approval of allowing the debtor to retain the attorney and his law firm.

(10) Does the attorney now, or has he ever, served on the debtor's board? . . . An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(11) Is there an undisclosed relationship pursuant to Rule 2014? . . . An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(12) Has the attorney received potential preferential payments? . . . An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(13) Is some individual or entity, in addition to the debtor, liable to the attorney who has applied to represent the estate on the prepetition claim? If so. is this individual or entity an insider? Affirmative answers to both of these questions disfavor approval of allowing the debtor to retain the attorney and his law firm.

(14) How badly does the Debtor really need to employ the attorney who has applied to represent the estate?  If the debtor really needs the services of the attorney, then this factor favors approval of allowing the debtor to retain the attorney and his

law firm.[39]

The totality of circumstances factors are applied as follows:

1. Sheehan jointed the Escambia Chapter 11 team about five (5) weeks after the cases were filed.

2. Sheehan is not and has never been an insider as to any of the Swarek companies.

3 & 4.  Sheehan has never held a lien or other type of interest in property of any of the Swarek related companies.

5. Sheehan has never represented any creditor of the estate(s).

6. Sheehan does not owe the Escambia estate(s) or any Swarek related entity any debt.

7. Sheehan has no pre-petition claim against the estate(s).

8. Before the appointment of a Chapter 11 Trustee, Sheehan served as general bankruptcy counsel for the Escambia Debtors for several months.

9. After appointment of the Chapter 11 Trustee, Sheehan did not participate in the Escambia cases further.

10. Sheehan has never served on any of the Debtors' boards.

11. There are no undisclosed relationships.

12. Sheehan has not received preferential payments.

13. Other than the Escambia Debtor(s), no individual or entity is obligated to Sheehan for his fees and expenses in these cases.

---

[39] See *In re SBMC Healthcare*, LLC, 473 B.R. 871, 880-81 (Bankr. S.D. Tex. 2012)(holding, under the totality of circumstances, debtor's retention of a law firm with a prepetition claim indirectly paid from proceeds following the sale of estate assets satisfying creditors was permissible, not a materially adverse interest rendering disinterestedness qualifying representation since no conflict.); See also *Waldron v. Adams & Reese, L.L.P. (In re American Int'l Refinery, Inc.)*, 676 F.3d 455, 462 (5th Cir. 2012)(5th Cir. adopted the totality of circumstances approach for interpreting a if third-party retainer payment caused a disqualifying interest); See also *In re W. Delta Oil Co., Inc.*, 432 F.3d 347, 356 (5th Cir. 2005)(explaining Courts analyze adverse interest with, ". . . eye to the specific facts of each case . . .").

14. When the Escambia Debtors' work was performed and fees and costs incurred, Sheehan's services were needed.

**d. Rather than denying fees, disgorgement, or severely limiting compensation, Sheehan's good faith actions, notwithstanding unintentional omissions, benefited the Escambia Debtors counterbalancing any alleged violations and activate exceptions under §§ 327(a) and 330.**

The instant matter is distinguishable from precedent of courts within the  Fifth Circuit disgorging, denying, or substantially reducing renumeration.  Precedent provides exemplary constructive comparisons and contrasts in support of applying mitigating factors granting Sheehan's fee applications and continued representation of the Escambia Debtors.  Fifth Circuit precedent aligns itself with the Seventh Circuit *stare decisis* awarding fees when there is a § 327 conflict because § 328(c) gives the Court discretionary authority to provide an erroneously employed professional payment.[40]

In *In re Fish & Fisher, Inc.*, 574 B.R. 608 (Bankr. S.D. Miss. 2017), the issue was ". . . whether a bankruptcy court *must* deny fees when it subsequently learns that a professional never should have been employed under § 327(a) . . . or whether it has discretion to deny fees.  *Id*."  *Id*. at. 613.  Under §§ 327-28, six months after the Court authorized a CPA firm representing a Chapter 11 debtor it vacated the Order and awarded a reduced expenses.  *Id*. at 610-11, 613.  In response to the UST's objection of the CPA's remuneration because under § 327 it was never employed and based on § 328, the CPA asserted their services benefited the estate and creditors justifying $21,774.83 in fees and $523.70 in expenses.  *Id*. at 610-11.  The Court held the Fifth Circuits equitable interpretation of § 328(c) empowered it to exercise discretion and counterbalance an

---

[40] *In re Fish & Fisher, Inc.*, 574 B.R. 608, 610-19 (Bankr. S.D. Miss. 2017) (holding, "It is clear that under § 328(c), the Court may deny compensation to a professional found not to be disinterested, but the Court is not required to deny compensation. 'Courts may deny all compensation to professionals who fail to make adequate disclosure, and 'counsel who fail to disclose timely and completely . . . proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation." *In re Am. Int'l Refinery, Inc*., 676 F.3d at 465-66. . .").

attorneys or CPAs unintentional failure to disclose or § 327 conflict in light of their good faith unintentional actions that benefited the estate. *Id*. at 614-19. Consequently, the Court denied only $178.54 in fees after the Court's Order vacating authorization and awarded $17,774.82 in fees as a sanction for failure to make complete disclosure to the Court. *Id*. at 619.[41]

Because payment in a § 327 dispute is a case-by-case fact intensive inquiry,[42] the guiding cases in *In re Fish & Fisher, Inc.*, 574 B.R. 608 (Bankr. S.D. Miss. 2017) are stated herein:

> [The aggregate of § 327 and § 328 means] [t]he Seventh Circuit rejected the UST's argument that pursuant to § 328, the bankruptcy court did not have any discretion to award KGW attorneys' fees and expenses . . . The fact that a bankruptcy court has discretion in denying the applicant's compensation is not an indication that courts should limit § 328(c) to situations in which professionals subsequently fail to meet § 327(a) requirements after their approval. Rather, this allocation of power recognizes that bankruptcy courts are courts of equity. See 11 U.S.C. § 105(a). It is conceivable that even an interested professional may provide services which are beneficial to the estate. A bankruptcy court should weigh the equities in deciding whether to deny fees under § 328(c), just as it does in deciding to reduce fees under § 329. See 11 U.S.C. § 329; see also *In re Wiredyne, Inc.*, 3 F.3d 1125, 1128 (7th Cir.1993). *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 83, 836, 837-39 (7th Cir. 1998).
>
> [Similarly,] [i]n *American International Refinery*,[43] the debtor filed an application to employ Adams & Reese, L.L.P. (A&R) as its bankruptcy counsel, and the bankruptcy court approved the application. At some point during the case, the bankruptcy court

---

[41] The payment requested was $21,774.83. $21,774.83-$4,000.00 denial = $17,774.82. *In re Fish & Fisher, Inc.*, 574 B.R. 608, 610-11, 619 (Bankr. S.D. Miss. 2017). **Authorization for debtor representation triggers Court discretion per 11 U.S.C. 328(c).** *Id*. at 615.

[42] *In re Black & White Stripes, LLC*, 623 B.R. 34, 50 (Bankr. S.D.N.Y. 2020)(citations omitted)(expressing, "Courts determine whether an adverse interest exists by examining the specific facts of each case."), *In re Interamericas, Ltd.*, 321 B.R. 830, 834, 836 (Bankr. S.D. Tex. 2005)(expressing that in a best interests analysis, the Court considers case specific factors), *In re Howell*, 148 B.R. 269, 272 (Bankr. S.D. Tex. 1992)(citations omitted)(expressing that Courts use a case-by-case evaluation to discern whether a conflict exists), *In re Glob. Marine, Inc.*, 108 B.R. 998, 1002, 1006 (Bankr. S.D. Tex. 1987)(citations omitted)(expressing, "This Court, in consideration of the language of § 328(c), adheres to this latter approach which balances, on a case by case basis, the benefits to the bankruptcy estate and creditors against the effects of an actual conflict.").

[43] *In re Fish & Fisher, Inc.*, 574 B.R. 608, 617 (Bankr. S.D. Miss. 2017) citing *Waldron v. In re American Int'l Refinery, Inc.*, 676 F.3d 455 (5th Cir. 2012). **"A&R was awarded $678,936.25 in fees and $63,100.67 in costs."** *Waldron v. In re American Int'l Refinery, Inc.*, **676 F.3d 455, 460 (5th Cir. 2012). Of the $742,036.92 awarded, disgorging $135,000.000 or 18.193164836057% of the total was the lenient sanction for non-disclosure.**

discovered that A&R had failed to disclose the source of its retainer. The liquidating trustee filed a complaint seeking disgorgement of the fees paid to A&R. The bankruptcy court found that A&R did not have a disqualifying adverse interest, but did find that A&R failed to make adequate disclosures to the court. The bankruptcy court ordered A&R to disgorge $135,000.00 of the fees [**and expenses totaling $751,065, or 18%]** it had received. The liquidating trustee argued to the Fifth Circuit that since A&R was not disinterested, all fees received by A&R had to be disgorged.  After examining the standards under § 327 . . . Applying **the totality of the circumstances test**, the Fifth Circuit affirmed the bankruptcy court's holding that A&R did not have a disqualifying adverse interest. [As a penalty for nondisclosure per § 328] The Fifth Circuit held that under § 328(c) . . . A bankruptcy court is not required, however, to deny all compensation if an attorney has an adverse interest and is found to not be disinterested.  [citing] *West Delta Oil*, 432 F.3d at 354-55; 11 U.S.C. § 328(c) . . .

Contrary to *West Delta Oil*, the Fifth Circuit found in *American International Refinery* that A&R's actions were suspicious, but unlike the attorneys in *West Delta Oil*, the court did not find any [proof of "egregiousness" or "adverse interest . . . actively plotting to harm the estate for their own benefit" or] "evidence that A&R took action contrary to the interests of the estate or gave legal advice that was colored by loyalty to a third party."  The Fifth Circuit held: ". . . that the bankruptcy court was acting well within its discretion in ordering disgorgement of only a portion of the retainer." *American International Refinery* 676 F.3d 455, 466 (5th Cir. 2012).[44]

Conflicts and nondisclosure are two bifurcated and overlapping issues that permeate 11 U.S.C. §§ 327-330.  Applying the aforementioned precedent, here, Tom Swarek owns the Escambia Debtors unlike other debtor structures between parent and subsidiaries, sister businesses,

---

[44] *In re Black & White Stripes, LLC*, 623 B.R. 34, 52 (Bankr. S.D.N.Y. 2020) that Judge Wilson mentioned during the March 31, 2026, Status Conference is distinguishable because it is a New York Second Circuit case involving multiple debtor representation at early stages of bankruptcy.  However, *In re Black & White Stripes* is consistent with the Fifth Circuit in opining, " . . . '[o]ne problem area that does influence courts to disqualify attorneys or deny their requests for compensation is the potential assertion of intercompany claims among the debtor entities.' 3 COLLIER ON BANKRUPTCY ¶ 327.04[5][b] . . . Courts are to review the potential conflicts on a case-by-case basis in connection with claims between debtors. *Id*. (explaining that multiple representation of debtors and/or creditors is not a per se conflict of interest); see also *In re Interwest Bus. Equip., Inc.*, 23 F.3d 311, 314 (10th Cir. 1994) (concluding that bankruptcy court did not abuse its discretion in denying employment of single law firm to simultaneously represent interrelated debtors where debtor-creditor relationship was established as a result of prepetition debts 'from one estate to the other'").). *Id*. at 50-20.

partnerships, or affiliates with unambiguous actual conflicts.[45]   Sheehan was properly employed, acted in good faith, and nondisclosure was unintentional.  Before the Court or any party in interest raised non-compliance, Sheehan disclosed all payments that he received, and at all times acted in the debtors' interests without a scheme to undermine their assets or debts.  Unlike cases punishing attorneys with severe sanctions, Sheehan did not commit egregious or adverse acts between the Escambia Debtors nor did he harbor prejudice or bias that discriminated in active plotting for his or one Escambia Debtor's pecuniary benefit over another Escambia Debtor's interests.  No act or omission diminished the value of the estates or any of their assets.  As stated, there is only a potential conflict or if a conflict, the conflict is defined as a "technical conflict" this Court has discretion to set aside based on the debtors' best interests and totality of circumstances.

## II.   DENIAL, DISGORMENT, OR SUBSTANTIAL REDUCTION CAN BE DISREGARDED BECAUSE, IN GOOD FAITH, SHEEHAN STRIVED TO COMPLY WITH § 329[46] AND RULE 2016 SUBSTANTIATING MITIGATING FACTORS EQUALING MINIMAL OR NO REDUCTION OF FEES AND COSTS.

Sheehan requests leniency for unfamiliarity with the disclosure mandated in § 329 and Rule 2016. "Few matters before bankruptcy Courts are as distasteful as the duty to examine transactions between a debtor and its attorney . . ."[47]   Sheehan is now keenly aware of his § 329 oversights, and the severity of such failures, and respectfully requests this Court grant discretionary

---

[45] *In re National Distributors Warehouse Co., Inc.*, 148 B.R. 558, 563 (Bankr. E.D. Ark. 1992*)*(citations omitted) that Judge Wilson mentioned during the March 31, 2026, hearing stated, "In so ruling, the Court does not rule that dual representation necessarily creates a conflict of interest.  It is not uncommon for a single law firm to represent a parent company and its subsidiaries or represent brother-sister corporations.  The mere existence of claims between related entities may not alone warrant disqualification. . . . In the instant case, however, the conflicts among the parties are so materially adverse that the dual representation . . . cannot be permitted.  The entanglement of interests coupled with the attorney fee payment by OCC to the Arnold firm likewise disqualifies that firm."

[46] Exhibit 10 -  11 U.S.C. § 329.

[47] *In re Chris Pettit & Assocs.*, 22-50591-CAG, at *25-26 (Bankr. W.D. Tex. Dec 13, 2022)(citations omitted)(explaining that regardless of four decades of a respected prominent attorney's bar membership, the Court will dispassionately analyze fee requests.).

leniency resulting in lower reduction rather than denying fee applications[48] or disgorgement as a sanction penalizing him for delayed disclosure.[49]  Cases that harshly punish attorneys mandating disgorgement or a substantial reduction of pre-petition fees and expenses are distinguishable from Sheehan and his Escambia Debtors.[50]  Consequently, because of the how the UST interpreted the law and facts Sheehan's reporting plus mitigating factors, Sheehan respectfully requests this Court's discretionary leniency to minimally lower payment, not disgorgement or substantial reduction.  Finally, although ". . . the court's broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to order disgorgement as a sanction . . . [,]"[51]  ". . . the provisions for employment and payment of a debtor's counsel in Chapter 11 are flexible and practical. 11 U.S.C. §§ 327-331 and 503(b)(2)."[52]  The boundaries of attorney punishment have been stated as:

> "the United States Supreme Court has cautioned that, '[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion."[53] . . . "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses

---

[48] *In re Chris Pettit & Assocs.*, 22-50591-CAG, at * 47-50 (Bankr. W.D. Tex. Dec 13, 2022)(citations omitted) See *Arnes v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003-04 (5th Cir. 1995)(citations omitted) See *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 747-48, 756 (Bankr. N.D. Tex. 1988).

[49] *Arnes v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003-05 (5th Cir. 1995).

[50] *Philly Fin., Inc. v. Williams (In re Williams)*, Case No.: 19-10390-SDM, at *12-29 (Bankr. N.D. Miss. Apr 23, 2021) see also *In re Mayeaux*, 269 B.R. 614, 620-29 (Bankr. E.D. Tex. 2001) See *Philly Fin., Inc. v. Williams (In re Williams)*, Case No.: 19-10390-SDM, at *14-20(holding substantial reduction for excessive billing arising from improperly billed subpoenas and billing exceeding 1/3 of the amount sought to be excepted from discharge).

[51] *Arnes v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003 (5th Cir. 1995)(interpreting 11 U.S.C. § 327.).

[52] *In re Jefferson Bus. Ctr. Assocs.*, 135 B.R. 676, 678-81, n.2 (Bankr. Colo. 1992)(citations omitted) (holding, "A debtor-in-possession may make a post-petition retainer payment to its counsel for post-petition services; the Code does not prohibit such conduct . . ." However, on these facts, unauthorized use of cash collateral negated post-petition payment and stated, "Clear and specific provision is made in 11 U.S.C. § 503(b)(2) to pay debtor's counsel, as a cost of administration, for services rendered to a debtor post-petition . . . is tailored to allow payment to debtor's counsel, but only within the scheme and safeguards embodied in Sections 327 through 331 of the Code."). See *In re Troung*, 259 B.R. 264, 267-68 (Bankr. N.J. 2001)(stating, "The analysis provided by *In re Jefferson Bus. Ctr. Assocs.* . . . provides a more flexible and better framework. In *Jefferson*, a debtor filed a request for court approval of a post-petition retainer against which its proposed counsel could draw monthly seventy-five percent of the fees and expenses for future services. The Court observed that 'The provisions for employment and payment of a debtor's counsel in Chapter 11 are flexible and practical,' and '[a] determination of whether, and in what amount, a retainer should be paid is best left to the parties and the discretion of the Court.' *Id.*" . . .).

[53] *Orchestratehr, Inc. v. Trombetta*, 178 F.Supp.3d 476, 482-83 (N.D. Tex. 2016) citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 46 (1991).

the judicial process."[54]  "A court may assess attorney's fees under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons' but 'must make a specific finding that the sanctioned party acted in bad faith in order to impose such sanctions.'[55] . . . And any sanctions ordered should be 'the least severe sanctions adequate to accomplish the purpose for which the sanction was imposed.'"[56]

To ascertain the proper amount to award an attorney consistent with § 329, the Fifth Circuit emphasis the equitable discretionary nature of the Court's authority.  Particularly:

> ". . . we have said that the bankruptcy court's "broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to order disgorgement as a sanction to debtors' counsel for nondisclosure."[57]  ("[T]he bankruptcy court is one of equity and thus has broad equitable—and hence discretionary—powers to award attorney's fees."). We have been clear that "[t]he bankruptcy court has inherent power to guard the practice of attorneys who appear in that court."[58] "These powers are discretionary and the bankruptcy court has broad authority to discipline attorneys and to award or disgorge fees paid in connection with bankruptcy proceedings." *Id*. While its authority is broad, when a bankruptcy court imposes a disciplinary sanction it "must use the least restrictive sanction necessary to deter the inappropriate behavior,"[59] . . . and "[t]he sanction levied must thus be commensurate with the egregiousness of the conduct." [60]

Fifth Circuit cases suggest that in this case, since there are no allegations of concealment, self-dealing, hidden interests, or sinister conduct, only oversight and unfamiliarity with bankruptcy code and rules, that these and other equitable factors be considered for a proportionate appropriate

---

[54] *Orchestratehr, Inc. v. Trombetta*, 178 F.Supp.3d 476, 482-83 (N.D. Tex. 2016) citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)

[55] *Orchestratehr, Inc. v. Trombetta*, 178 F.Supp.3d 476, 482-83 (N.D. Tex. 2016) citing *Matta v. May*, 118 F.3d 410, 416 (5th Cir. 1997).

[56] *Orchestratehr, Inc. v. Trombetta*, 178 F.Supp.3d 476, 482-83 (N.D. Tex. 2016) citing *Topalian v. Ehrman*, 3 F.3d 931, 938 (5th Cir. 1993); accord *Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 952-53 (5th Cir. 2001).

[57] *Baker v. Cage (In re Whitley)*, 737 F.3d 980, 988 (5th Cir. 2013) citing *In re Prudhomme*, 43 F.3d at 1003; see also *Anderson v. Anderson (In re Anderson)*, 936 F.2d 199, 204 (5th Cir. 1991).

[58] *Baker v. Cage (In re Whitley)*, 737 F.3d 980, 988 (5th Cir. 2013) citing *Suffness v. Petros (In re Avante Real Estate, Inc.)*, 69 F.3d 536, 1995 WL 625456, *8 (5th Cir. Oct. 11, 1995) (citing 11 U.S.C. § 105).

[59] *Baker v. Cage (In re Whitley)*, 737 F.3d 980, 988 (5th Cir. 2013) citing *Harris v. First City Bancorporation of Tex., Inc. (In re First City Bancorporation of Tex., Inc.)*, 282 F.3d 864, 867 (5th Cir. 2002).

[60] *Baker v. Cage (In re Whitley)*, 737 F.3d 980, 988 (5th Cir. 2013) citing *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 478 (6th Cir. 1996).

sanction. Further, in correlation with equitable discretion, this Court may consider a firm's size and the negative impact disgorgement or substantial reduction would cause.[61] For example, Sheehan and Ramsey is a small firm that undertook a large task in good faith. Ordering substantial or total disgorgement would have a devastating possible fatal impact on the firm.

### a. 11 U.S.C. § 329 LEGAL STANDARD

"One of the cornerstones of the regulatory structure is the necessity for attorneys to . . . honestly disclose their transactions with clients. This disclosure requirement is embodied in 11 U.S.C. § 329(a) and implemented through Bankruptcy Rule 2016(b)."[62] "Section 329 requires a debtor's attorney to disclose a statement of the compensation paid or agreed to be paid . . . [,]"[63] within one year of receiving the retainer and filing a petition.[64] 11 U.S.C. § 329(a). Sheehan now understands payment reporting mandates made ". . . in contemplation of or in connection with . . ." a bankruptcy case within one year of filing the petition.[65] 11 U.S.C. § 329(a).

Sheehan reported all pre-petition payments received in contemplation of bankruptcy. Ancillary payments before October 13, 2023, were for work unrelated to filing bankruptcy. Under § 329 and Rule 2016, except for the attached copies of employment agreements, (Exhibit 7), Sheehan disclosed everything the law requires, albeit untimely. Thus, Sheehan substantially complied with bankruptcy law.

---

[61] *In re the Harris Agency LLC*, 451 B.R. 378, n. 30 (Bankr. E.D. Pa. 2011)(stating, "At the same time, it would be within the Court's discretion and reasonable under the circumstances simply to deny all fees to Winterhalter. The Court will not choose to exercise its discretion in this way, in part because it is mindful that the Firm is a small one and the sanctions as imposed will have a significant impact.").

[62] *In re Mayeaux*, 269 B.R. 614, 620 (Bankr. E.D. Tex. 2001) citing *In re Levin*, 1998 Bankr. LEXIS 1301, *5-6, 1998 WL 732878, *2 (Bankr. E.D. Pa., Oct. 15, 1998).

[63] *In re Feilitech US LLC*, No.: 23-10599-SDM, 2023 Bankr. LEXIS 2997, at *49 (Bankr. N.D. Ms. Dec. 21, 2023).

[64] *Arnes v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1002 (5th Cir. 1995)(citations omitted)(explaining if debtor(s) payment was made within one year of filing a bankruptcy petition, payment made within one year of filing the bankruptcy petition falls within 11 U.S.C. § 329 mandating the payment be reported in a year, regardless of when an agreement was made.).

[65] *Arnes v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1002 (5th Cir. 1995)(citations omitted)(When debtors are in "desperate" economic circumstances, the Court presumes the fee was paid in ". . . contemplation of or connection with . . ." the bankruptcy case.).

"The Code further provides, 'If such compensation exceeds the reasonable value of any such services, the court may . . . order the return of any such payment, to the extent excessive.' § 329(b)."[66]   Under § 329, this Court has discretion to deny fee applications[67] and order disgorgement[68] as a sanction penalizing him for delayed disclosure.  Similar to a remittitur or additur, this Court may also adjust an attorney's compensation downward or upward.[69]  Finally, cases that harshly punish attorneys ordering disgorging all or a substantial pre-petition and subsequent fees and costs received from a debtor in a bankruptcy case are distinguishable from Sheehan and his Escambia Debtors.[70]

Sheehan's untimely disclosures did not harm the Escambia Debtors and helped them with initial stages of bankruptcy and subsequent crucial contentious matters.  The delayed disclosures

---

[66]  *Arnes v. Boughton (In  re Prudhomme)*, 43 F.3d 1000,  1002-04 (5th  Cir. 1995)(citations  omitted)(explaining  if debtor payment was made within one year of filing a bankruptcy petition, payment made within one year of filing the bankruptcy petition falls within 11 U.S.C. § 329 mandating the payment be reported in a year, regardless of when an agreement was made and holding per § 329(a)(b), Court can disgorge excessive and/or unreported retainer and fees).

[67] *In re Chris Pettit & Assocs.*, 22-50591-CAG, at * 47-50 (Bankr. W.D. Tex. Dec 13, 2022)(holding fee application was denied because debtor's attorney's Supplemental Affidavit of Disinterest made the source of payment and how many payments were made vague and ambiguous.) see also *Arnes v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003-04 (5th  Cir. 1995)(citations  omitted)(opining Court has equitable discretion to deny or grant fees paid in bankruptcy cases) see also *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 747-48, 756 (Bankr. N.D. Tex. 1988)(citations omitted)(opining fees denied for lacking disclosure of fee arrangement, concealing the source of compensation even from a third party, and disgorgement for failing to disclose a § 327 actual conflict without exception).

[68]  *Arnes v. Boughton (In  re Prudhomme)*, 43 F.3d 1000,  1003-05 (5th  Cir. 1995)(citations  omitted)(opining ".  .  . concealment was misconduct justifying the disgorgement even if § 329(a) would otherwise preclude recovery of fees . . . [and] . . . drawing on prepetition retainer without approval of bankruptcy court preempts court's power to determine reasonableness and legality of fees; violations of § 329 and Rule 2016 subject counsel to order of disgorgement . . .").

[69] *Asarco, L.L.C. v. Jordan Hyden Womble Culbreth & Holzer, P.C. (In re Asarco, L.L.C.)*, 751 F.3d 291 (5th Cir. 2014)(although the UST did not object, against a debtor's objections, per § 330, lodestar, *Johnson* factors, the Court affirmed awarding fee enhancements in the millions on the attorney's performance and results) see *In re El Paso Refinery, LP*, 257 B.R. 809, 822-28 (opining fee enhancement authorized in rare and exceptional cases to mirror the nexus between work performed and results).

[70] *Philly Fin., Inc. v. Williams (In re Williams)*, Case No.: 19-10390-SDM, at *12-29 (Bankr. N.D. Miss. Apr 23, 2021)(citations omitted)(applying Rule 1.5 and lodestar resulted in a 75% reduction, because after botching settlement, "'. . . debtor cannot avoid paying for fees that she caused the creditor to reasonably incur.'" but counsel submitted troubling billing and uncooperative diligence, courtesy, and cooperation to settle.); *In re Mayeaux*, 269 B.R. 614, 620-29 (Bankr. E.D. Tex. 2001) (citations omitted)(granting the UST Motion to Examine Transactions because of experienced debtor's counsel's intentional concealment and unilateral failure to disclose pre and post-petition payments made in contemplation and connection with bankruptcy - an independent entity exposed debtor's counsel and on cross exam in a hearing to dismiss or convert the case, debtor's counsel only admitted concealment because he falsely averred payments were not in contemplation or connection to bankruptcy.); See *Philly Fin., Inc. v. Williams (In re Williams)*, Case No.: 19-10390-SDM, at *14-20(holding substantial reduction for excessive billing arising from improperly billed subpoenas and billing exceeding 1/3 of the amount sought to be excepted from discharge).

were unintentional oversights, not willful, or deliberate withholdings to hide unscrupulous actions rooted in scienter, fraud, contumacious misconduct, maliciousness, pecuniary prejudice, favoritism, or placing his interest ahead of Escambia Debtors.  Similar to a remittitur or additur, this Court has discretion to accordingly adjust Sheehan's claims for payment.

> **b. Calculating Remuneration Requested in a Fee Application:  Fifth Circuit Courts aggregate 11 U.S.C. § 330(a)(3), Mississippi Rules of Professional Conduct 1.5 ("Rule 1.5"), and Lodestar factors to sum attorney compensation.**

Under Sections 329 and 330, Sheehan's Fee Applications are reasonable and the work billed for was necessary under the circumstances.  This Court should grant Sheehan's requests for remuneration pursuant to Sections 105(a),[71] 329(a), 330(a)(3) et seq., Rule 1.5, and Lodestar factors.[72]  Moreover, the way to justify an attorney's remuneration requested in their fee application is in the sequential order from 330(a), to Rule 1.5, and then the Lodestar factors for payment.

Consistent with precedent, Sheehan is entitled to receive a substantial amount of what he requested in his fee applications because of his good faith, complexity, and compliance with §§ 328-330, Rule 2014, and 2016, less his unintentional delay is disclosures that caused no harm. Sheehan billed reasonable time at a reasonable rate compared to other attorneys at larger firms. The aggregate of § 105, 329(a), 330(a)(3), Rule 1.5, and Lodestar factors establish this Court's discretionary authority to award Sheehan renumeration that adequately compensates him for sufficient work he performed on Escambia's complex cases for reasonable time and rate.

---

[71] "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title . . .  shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  11 U.S.C. § 105(a).

[72] *In re El Paso Refinery, LP*, 257 B.R. 809, 821-22 (Bankr. W.D. Tex. 2000)(citations omitted)(stating, "The Fifth Circuit issued a decision . . . suggesting that 'our circuit's method . . . is generally to apply the Johnson factors after the lodestar has been calculated.'" *Riddell v. National Democratic Party*, 712 F.2d 165, 170 (5th Cir. 1983).).

### i.   11 U.S.C. § 330(a).  Compensation of Officers

In a Chapter 11 bankruptcy, Section 330(a) governs the scope of compensable work that is reasonable and necessary to pay all professionals who benefits a debtor's estate.[73]

> Section 330(a)(3) of the Bankruptcy Code provides a non-exclusive list of factors that bear on a court's determination of the reasonable compensation for actual, necessary services and expenses rendered by attorneys and other court-supervised bankruptcy professionals. See 11 U.S.C. § 330(a)(1)(A). Thus, [T]he court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.[74]

---

[73] See *Asarco, L.L.C. v. Jordan Hyden Womble Culbreth & Holzer, P.C. (In re Asarco, L.L.C.)*, 751 F.3d 291, 299-302 (5th Cir. 2014); See *CRG Partners Grp., L.L.C. v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 655-56 (5th Cir. 2012), See *In re Cyrus II P'ship*, No. 05-39857, 2009 Bankr. LEXIS 2587, at *3-16 (Bankr. S.D. Tex. Sept. 1, 2009).

[74] *Asarco, L.L.C. v. Jordan Hyden Womble Culbreth & Holzer, P.C. (In re Asarco, L.L.C.)*, 751 F.3d 291, 295, 299-302 (5th Cir. 2014)(analyzing what equals compensable services that benefit the estate); See *CRG Partners Grp., L.L.C. v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 655-56 (5th Cir. 2012); See ), See *In re Cyrus II P'ship*, No. 05-39857, 2009 Bankr. LEXIS 2587, at *3-16 (Bankr. S.D. Tex. Sept. 1, 2009).

From May to October 2025, Sheehan dedicated himself nearly full time on the Escambia cases, and dedicated substantial time to the Blue Diamond case after it was severed from the EOC and EAC cases in October 2023 continuing to March, 2024.  Under the circumstances, his rates were reasonable, i.e.: $350 per hour for work prior to January 1, 2024, and $450 per hour for Blue Diamond after January 1, 2024.  Sheehan's work on these cases was indispensable to their administration.  These are complex cases with extensive assets.  It required substantial time to accomplish indispensable tasks.  Sheehan is not board certified but has significant Chapter 11 experience and his time and billing rates are moderate.  Sheehan's requested compensation is reasonable, with understanding there may be reduction based on reporting delays.

> **ii.    After considering Section 330, Bankruptcy Courts use the lodestar method to sum attorney's expenses subsequently sifted through Mississippi Rules of Professional Conduct 1.5, for reasonableness.**

In conjuncture with Section 330(a), the Fifth Circuit applies the lodestar method to calculate attorney's expenses.  The lodestar method is a formula wherein first the number of hours a professional works is multiplied by hourly rate and then adjusted down or up in consideration of the *Johnson*[75] factors.[76]  The *Johnson* factors are:

> (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases.[77]

---

[75] *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)(citations omitted).

[76] See *Philly Fin., Inc. v. Williams (In re Williams)*, Case No.: 19-10390-SDM, at *12-29 (Bankr. N.D. Miss. Apr 23, 2021)(citations omitted); See *Asarco, L.L.C. v. Jordan Hyden Womble Culbreth & Holzer, P.C. (In re Asarco, L.L.C.)*, 751 F.3d 291, 295-99 (5th Cir. 2014); See *CRG Partners Grp., L.L.C. v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 655-667 (5th Cir. 2012); See *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799-800 (5th Cir. 2006)

[77] *See Asarco, L.L.C. v. Jordan Hyden Womble Culbreth & Holzer, P.C. (In re Asarco, L.L.C.)*, 751 F.3d 291, 295-99, n.4 (5th Cir. 2014) (citations omitted)(analyzing the *Johnson* factors and stating exceptions to the Johson factors are

The Loadstar and *Johnson* Factors are applied to Sheehan's fee applications generally as follows:

1. The time and labor reflected in Sheehan's invoices is extensive.

2. The cases were difficult given the status of the debtors books and records pre-petition and their extensive assets.

3. Sheehan marshaled the various assets and generated schedules.

4. Sheehan spent nearly full time on these cases at the peak in activities.

5. Sheehan's fees were lower than market.

6. The fee was a fixed hourly rate.

7. Time was of essence due to ongoing operations.

8. Large amounts were involved.

9. Sheehan had adequate experience to effectively administer the cases and marshal assets into schedules.

10. The cases were undesirable because of the time required to be expended and the lack of accurate records from which to work.

11. Sheehan did not have a professional relationship with the clients until shortly after filing the filing of the petitions.

12. There are no similar cases in this market.

Applying these precepts, in the case *sub judice*, the Bankruptcy Court has discretion to appropriate the amount Sheehan receives from what he requested in his fee application because of

---

". . . (1) the hourly rate used for the lodestar does not adequately measure the attorneys' 'true market value'; (2) the attorneys' performance included an 'extraordinary outlay of expenses and the litigation is exceptionally protracted'; (3) the attorneys' performance involved an 'exceptional delay in the payment of fees.'"); See *CRG Partners Grp., L.L.C. v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 655-667 (5th Cir. 2012); See *In re El Paso Refinery, L.P.*, 257 B.R. 809, 824-28 (Bankr.W.D.Tex.2000)(stating, ". . . the Johnson factors no longer played quite so large a role in a bankruptcy court's determination of 'reasonable compensation' (i.e., the base 'lodestar'), except inasmuch as four of the factors are still subsumed in the lodestar calculation . . .").

the complexity of work given and reasonable billing rate.[78]   Like *In re Asarco, L.L.C.*, 751 F.3d 291 (5th Cir. 2014), here, Sheehan was tasked with ". . . deciphering [hundreds of thousands] of pages of documents and using those documents to tell a compelling story primarily out of the mouths of adverse witnesses."  *Id* at 298.  The *Escambia* cases were onerous, arduous, complex litigation and Sheehan performed intricate organization tracing the sources, amounts of payments, billing, and in good faith disclosed relevant information for all parties as soon as he knew the mandates.[79]

Sheehan's representation in the *Escambia* cases are equitable mitigating factors this Court may consider to *minimally* lower recovery sought in fee applications instead of harsher reduction because less overlooking disclosure, this Court could grant his fee request.  The proceeding modality next mandates the Court to ambulate evaluating the lodestar and Johnson factors through Mississippi Rules of Professional Conduct 1.5 to memorialize reasonableness. [80]

<blockquote>

**iii.   Section 330(a), the lodestar method, and *Johnson* factors are filtered through the Mississippi Rules of Professional Conduct 1.5 ("Rule 1.5") to ascertain a reasonable amount awarded to Sheehan.**

</blockquote>

Because this Court could have awarded Sheehan fee enhancements given the extenuating breadth of Escambia Debtors' representation, according to Section 330(a), the lodestar method, *Johnson* factors, and Rule 1.5, his fee applications are reasonable requests for justifiable renumeration.  "In Mississippi, determinations regarding the reasonableness of attorney's fees are

---

[78] See *Asarco, L.L.C. v. Jordan Hyden Womble Culbreth & Holzer, P.C. (In re Asarco, L.L.C.)*, 751 F.3d 291, 295-99 (5th Cir. 2014).

[79] *Id*. at 297-98.

[80] *Philly Fin., Inc. v. Williams (In re Williams)*, Case No.: 19-10390-SDM, at *12-29 (Bankr. N.D. Miss. Apr 23, 2021)(citations omitted)(". . . comparing Miss. R. Prof'l Conduct 1.5 and lodestar method outlined in *Johnson* . . .").

governed by Rule 1.5 . . . which is 'almost identical' to the lodestar method and the *Johnson* factors

used by the Fifth Circuit in reviewing fee applications . . ."[81]  Rule 1.5 states:

> (1) the time and labor required, the novelty and difficulty of the
>     questions involved, and the skill requisite to perform the legal
>     service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the
>     particular employment will preclude other employment by the
>     lawyer;
> (3) the fee customarily charged in the locality for similar legal
>     services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the
>     circumstances;
> (6) the nature and length of the professional relationship with the
>     client;
> (7) the experience, reputation, and ability of the lawyer or lawyers
>     performing the services; and
> (8) whether the fee is fixed or contingent.[82]

Although reducing fees may be warranted because of failure to comply with the mandates

of § 329 and Rule 2016, Sheehan's work was required for the administration of the debtors' estates

and added substantial value.  The cost of bringing in other qualified counsel unfamiliar with the

debtors' operations and assets would have been and would be excessive.  For all reasons elucidated

herein, Sheehan provided procedural and substantive value to the estates.

> **a.  Sheehan violated the Federal Rules of Bankruptcy, Rule 2016, but in good faith
>     disclosed when he filed his fee application and his conduct did not harm any
>     entity associated with the Escambia Debtors.**

"Bankruptcy Rule 2016 mirrors the requirements of § 329 and requires a supplemental

statement for any payment or agreement not previously disclosed. Fed. R. Bankr. P. 2016(b)."[83]

---

[81] *Philly Fin., Inc. v. Williams (In re Williams)*, Case No.: 19-10390-SDM, at *12-29 (Bankr. N.D. Miss. Apr 23, 2021)(citations omitted) (applying Rule 1.5 resulted in a 50% reduction, because after botching settlement, "'. . . debtor cannot avoid paying for fees that she caused the creditor to reasonably incur.'" yet counsel presented troubling billing and uncooperative diligence, courtesy, and cooperation to settle.).

[82] *Philly Fin., Inc. v. Williams (In re Williams)*, Case No.: 19-10390-SDM, at *13 (Bankr. N.D. Miss. Apr 23, 2021).

[83] *In re Feilitech US LLC*, No.: 23-10599-SDM, 2023 Bankr. LEXIS 2997, at *49 (Bankr. N.D. Ms. Dec. 21, 2023).

(b) Disclosing Compensation Paid or Promised to the Debtor's Attorney.

(1) *Basic Requirements.* Within 14 days after the order for relief—or at another time as the court orders—every debtor's attorney (whether or not applying for compensation) must file and send to the United States trustee the statement required by § 329 [11 USCS § 329]. The statement must:

(A) show whether the attorney has shared or agreed to share compensation with any other entity; and

(B) if so, the particulars of any sharing or agreement to share, except with a member or regular associate of the attorney's law firm.

(2) *Supplemental Statement.* Within 14 days after any payment or agreement to pay not previously disclosed, the attorney must file and send to the United States trustee a supplemental statement.

As stated in the "Introduction" section above, **Sheehan's failure to properly and timely disclose was not an intentional disregard of law or flaunting disclosure rules, but a misconception that third party payments were not required to be reported until a fee application was filed**. This misconception carried through to all of the instant cases and *Escambia* cases[84] for which third party payments were accepted. The ramifications were amplified and multiplied across multiple cases. Sheehan made no attempt to conceal the third party payments exhibited by Sheehan's reporting in the fee applications in each of the subject cases.[85] Cases that penalize attorneys mandating disgorgement or a substantial amount of fees and costs received from a debtor in a bankruptcy case are distinguishable from Sheehan and the Escambia Debtors.[86]

---

[84] Blue Diamond Energy, Chapter 11 No. 23-50490-JAW, Escambia Operating Company, LLC, Chapter 11 No. 23-50491-JAW, and Escambia Asset Company, LLC, Chapter 11 No. 23-50492-JAW

[85] They were not reported in the Black Diamond or the Tri Element Chapter 7 cases as fee applications were not filed in those cases.

[86] *Philly Fin., Inc. v. Williams (In re Williams)*, No.: 19-10390-SDM, at *12-29 (Bankr. N.D. Miss. Apr 23, 2021)(citations omitted)(applying Rule 1.5 and lodestar resulted in a 75% reduction, because after botching settlement,

### III.   SHEEHAN'S GOOD FAITH, WITH NO INTENTIONAL CONCEALMENT, AND BALANCING EQUITABLE FACTORS SUPPORTS RETAINING SHEEHAN

This Court is empowered to grant or minimally reduce Sheehan's fee applications because of unintentional omissions, not an intentional effort to conceal payment.[87]   The law does not define an attorney's "good faith" in the context of §§327-330, Rule 2016, or 2017, but identifies what denotes bad faith and misconduct on a case-by-case approach.   However, cases concentrating on good faith in the context of a director's fiduciary duties owed to a corporation under the entire fairness standard analogously[88] articulate good faith is part of loyalty and "requires 'true faithfulness and devotion to the interests to the corporation . . .'"[89]   While it is in this Court's discretion to deny Sheehan all fees and costs he requested, numerous United States jurisdictions analyze an attorney's good faith and various equitable factors to slightly lower or guide the Court on how to distribute remuneration.   For instance:

---

"'. . . debtor cannot avoid paying for fees that she caused the creditor to reasonably incur.'" but counsel submitted troubling billing and uncooperative diligence, courtesy, and cooperation to settle.); *In re Mayeaux*, 269 B.R. 614, 620-29 (Bankr. E.D. Tex. 2001) (citations omitted)(granting the UST Motion to Examine Transactions because of experienced debtor's counsel's intentional concealment and unilateral failure to disclose pre and post-petition payments made in contemplation and connection with bankruptcy - an independent entity exposed debtor's counsel and on cross exam in a hearing to dismiss or convert the case, debtor's counsel only admitted concealment because he falsely averred payments were not in contemplation or connection to bankruptcy.); See *Philly Fin., Inc. v. Williams (In re Williams)*, No.: 19-10390-SDM, at *14-20(holding substantial reduction for excessive billing arising from improperly billed subpoenas and billing exceeding 1/3 of the amount sought to be excepted from discharge).

[87] *Osherow v. Dundon (In re Legendary Field Exhibitions, LLC)*, Case No. 19-50900-CAG, Adv. 22-05078-CAG, 208-45 (Bankr. W.D. Tex. Nov 25, 2025); *In re CLST Enters., LLC*, 672 B.R. 187, 200-202 (Bankr. S.D.N.Y. 2025); *In re Howard Ave. Station, L.L.C.*, 568 B.R. 146, 152-54 (Bankr. M.D. Fla. 2017); *In re Howard Ave. Station, L.L.C.*, 568 B.R. 146, 149-54 (Bankr. M.D. Fla. 2017); *Baker v. Cage (In re Whitley)*, 737 F.3d 980, 987-88 (5th Cir. 2013); *In re Parklex Assocs., Inc.*, 435 B.R. 195, 206-211 (Bankr. S.D.N.Y. 2010); *Vergos v. Mendes & Gonzales, PLLC (In re McCrary & Dunlap Constr. Co., LLC)*, 79 Fed.Appx. 770, 778-780 (6th Cir. 2003).

[88] *In re Fretter, Inc.*, 219 B.R. 769, 776 (Bankr. N.D. Ohio 1998)(citations omitted)(stating, "'The bankruptcy court is vested with the inherent power to sanction attorneys for breaches of fiduciary obligations.'").

[89] *Osherow v. Dundon* (In re Legendary Field Exhibitions, LLC), Case No. 19-50900-CAG, Adv. 22-05078-CAG, 208-45 (Bankr. W.D. Tex. Nov 25, 2025)(citations omitted)(discussing entire fairness standard per corporate director's standard of conduct and fiduciary duties of care and loyalty putting corporate interests before self and not self-deal).

**(1)** Regarding § 329 and Rule 2016, when an attorney realized a debtor paid excess fees because of a software glitch causing a scrivener's billing error and refunded the money, Court did not sanction the attorney because there was no illegal intent;[90]

**(2)** Regarding counsel's unknowing breaches of § 329 and untimely Rule 2016 disclosures when it was the first time representing a fiduciary of a bankruptcy estate in correlation with third party payments, the Court required a minimal refund rather than disgorgement and stated, "The Court is confident that Special Counsel will, as he must, in all future matters accurately, completely, and timely comply with the duties under § 329 and Rule 2016(b)."[91]   The Court exercised their equitable discretion by applying the following factors:

> ". . . the attorney's experience level in the subject area of practice, the attorney's willfulness or recklessness, whether the violation is a mere technical violation, the attorney's level of cooperation with parties in interest to rectify the noncompliance, the reason for the noncompliance, harm to the estate and mitigation of any harm, whether the attorney is operating under a reduced fee agreement or other concessions, prior instances of noncompliance and the circumstances surrounding those instances, the promptness of any cure of the subject noncompliance, steps taken by the attorney to prevent similar conduct in the future, the excessiveness of compensation and expenses charged by the attorney, and — although alone the means cannot justify the ends — the results obtained for the estate."[92]

**(3)**   In the wake of an attorney breaching §§ 330-31 and Rule 2016(a), apologies and expressions of contrition are inconsequential for a Court determining whether to order complete or partial disgorgement as a sanction from either a technical versus a willful, intentional, callous,

---

[90] *In re Gage*, 394 B.R. 184, 191-93 (Bankr. N.D. Ill. 2008)(citations omitted)(Per § 329 and Rule 2016, it is in Court's discretion to not penalize an attorney who ". . . realized the seriousness of his errors and omissions by his commendable efforts to mitigate by tendering a full refund of all fees and costs to the Debtor even before the pleadings were joined in this [and] . . . negotiated settlements with the Trustee . . . where such extra or unauthorized fees were charged . . .").
[91] *In re Howard Ave. Station, L.L.C.*, 568 B.R. 146, 149, 150, 153-54 (Bankr. M.D. Fla. 2017)(citations omitted) **(application sought: $47,852.21, Court awarded: $46,602.21 = 3.3% reduction or 97.7% of the request)**.
[92] *In re Howard Ave. Station, L.L.C.*, 568 B.R. 146, 153-54 (Bankr. M.D. Fla. 2017)(citations omitted).

disregard for primary authority.[93]   "Caselaw establishes that the benchmark for determining the severity of the sanction to be imposed is willfulness."[94]   Whether to order complete or partial disgorgement hinges on an attorney intentionally disregarding fiduciary obligations, deliberate concealment, flagrant violations of professional duties, versus non-willful inadvertent violations.[95]

**(4)** *In re Waldron v. Adams & Reese, LLP,* (*In Re: Am. Int'l Refinery, Inc.*) 676 F. 3d 455 (5th Cir. 2012), the issue was whether debtor's attorneys had to return payments totaling approximately $742,000 for non-disclosure, and if the bankruptcy court erred in finding that the attorneys potential or technical conflict of interest was permissible.   The Fifth Circuit found that the bankruptcy Court did not commit error on the issue of technical conflict not being disqualifying, and that the bankruptcy Court did not abuse its discretion in requiring the return of 18% of the fees and expenses, or $135,000.   *Id*. at 460.   Although the Court could have ordered complete disgorgement, the attorney's unintentional rather than willful noncompliance with §§ 327-331, Rule 2014, 2016, and 2017 resulted in returning a lesser amount.   *Id*. at 455-467.

**(5)**   The *In re: Howard Ave. Station, LLC*, 568 B.R. 146 (Bankr. M.D. Fla. 2017), facts were similar to the case at hand.   For instance, special counsel the DIP retained was paid by a third-party non-debtor (the owner of the debtor), and counsel failed to file Rule 2016 statements due to his failure to understand that these third-party payments were required to be reported under §329 and Rule 2016.   *Id*. at  149-154.   Under the circumstances, the Court found that such non-compliance should be evaluated on a case-by-case review, and consider mitigating factors, including the "willfulness or recklessness" of the offense, the level of cooperation to rectify the

---

[93] *Vergos v. Mendes & Gonzales, PLLC (In re McCrary & Dunlap Constr. Co., LLC)*, 79 Fed.Appx. 770, 778-780 (6th Cir. 2003)(citations omitted).
[94] *Vergos v. Mendes & Gonzales, PLLC (In re McCrary & Dunlap Constr. Co., LLC)*, 79 Fed.Appx. 770, 779 (6th Cir. 2003)(citations omitted).
[95] *Vergos v. Mendes & Gonzales, PLLC (In re McCrary & Dunlap Constr. Co., LLC)*, 79 Fed.Appx. 770, 778-780 (6th Cir. 2003)(citations omitted).

non-compliance, and reason for the non-compliance.  *Id*. at 146, 149, 150, 153-54.  The Court considered the unintentional non-compliance and that counsel cooperated with the UST after it was called to his attention and imposed a sanction of disgorgement of $1,250.00 or, in other words, Court awarded: $46,602.21 of 47,852.21 = 3.3% reduction or 97.7% of the request.  *Id*.

**(6)**  Regarding §§ 327-31, Rule 2014, and 2016(a), the linchpin in granting or denying, complete or partial disgorgement, and penalizing an attorney for misconduct through sanctions hinges on case specific conduct according to egregiously willful versus inadvertent conduct.[96]

Similar to *Howard Station, supra,*  Sheehan co-operated with the Court in the UST in rectifying in filing a his amended fee applications for these cases (Dkt. Nos. 917, 919, 920 and 921) with comprehensive appendices compiling the pertinent components of his fee applications in the Escambia cases and the EDGO cases, including details of his reporting failures.  He also filed belated Rule 2016 disclosure statements for all payments received in these cases.

Applying precedent and the Court's equitable discretion, to the case *sub judice*, it is in the reasonable spectrum of discretion to allow Sheehan to be paid amounts in his requests or minimal reduction since despite inadvertence, he disclosed prior to others raising the issue.  In good faith, Sheehan was and is faithfully devoted to evenhandedly representing the debtor's interests free from putting his or another debtor's pecuniary interests before his own.   Sheehan's intent to report all payments is evidenced by his fee applications detailing all payments received, and subtracted such amounts from totals requested in his fee applications.  Every fee application was filed before the Court or UST raised the issue and deducted amounts of each from the compensation requested.

---

[96] *Hancock v. Limor*, Case No. 3:07-0639, 2007 U.S. Dist. LEXIS 92933, *18-28, 2007 WL 4481436 (M.D.Tenn. Dec. 18, 2007)(citations omitted, citing vast cases across multiple jurisdictions throughout U.S.).

Sheehan honestly reported all receivables from the debtors and any billing error is attributable to an unintentional scrivener's error without an intent to take advantage of the debtor or get away with illegal conduct without being caught.  In considering equitable factors the Court uses to connote how to fiscally administrate fee applications, Sheehan's oversights are mere technical violations and did not engage in intentional misconduct, willfulness or recklessness, the debtors were fine with Sheehan's billings and did not initiate payment disputes, Sheehan's representation benefited the EDGO estates, Sheehan promptly responded to fee application inquiries, billed reasonable rates, and now has an approach for compliance in future cases. Sheehan did not commit the type of egregious intentional violations that ignored the duty of candor or dignity to the debtors and Court.

Consequently, consistent with Fifth Circuit and other circuits, because of Sheehan's candor to the debtors, Court, and unintentional oversights free from willful, intentional, callous disregard for fiduciary duties, precedent supports minimally lowering amounts in Sheehan's fee applications. Although the Court can disgorge the entire amount, because of the unintentional nature of Sheehan's actions and his good faith, it is within this Court's equitable discretion not to disgorge or harshly require Sheehan to substantially refund or not receive remuneration.  Thus, Sheehan respectfully requests this Court consider his good faith and unintentional inadvertence in appropriating payment.

## IV. CONCLUSION

Sheehan had a blind spot in his working knowledge of the bankruptcy code and rules, which led to omissions in reporting fees for third-party non-debtors.  He made honest mistakes, with no self-interest being advanced and no attempt to conceal payments received.  All of the payments Sheehan received were disclosed before any party in interest or the Court raised an issue.  Sheehan had no actual conflict in interest, only a potential or technical conflict that never ripened into an

actual conflict.  He was not in a position to split loyalties or favor one set of debtors over the other. Any potential conflict over ownership of assets between the two groups of debtors was resolved by the two chapter 11 trustees without Sheehan's involvement.

Sheehan's work was valuable to all of the debtors' estates.  In the EOC cases, he did the initial work on the case through the 341, filed schedules and prepared and filed a disclosure statement and proposed plan of reorganization.  In the EDGO cases, he did the initial bankruptcy work, filed and defended motions, and prepared voluminous schedules.  No act or omission tendered to devalue any estate or its assets.

Cases interpreting §§ 327-330 and Rules 2014-17 found disqualifying conflicts and disgorge or substantially reduce remuneration based on distinguishable egregious conduct bifurcated from Sheehan's impartiality and undivided loyalty without adverse economic incentive. ". . . [I]t cannot be denied that in bankruptcy, 'almost everyone loses something.'"[97] and the altruistic goal is that through bankruptcy an honest debtor can have a fresh start to benefit the collective good of the economy and subsequently the nation at large.[98]  It is within the Court's discretionary scope to permit representation when there is only a potential, not an actual conflict, and when there is a technical conflict, to set such conflict aside for the debtor's best interests via the totality of circumstances.  That is exactly your case at your hand.  Any alleged conflict Sheehan has regarding the EOC debtor's is merely a potential conflict or nothing more than a slight

---

[97] *Asarco, L.L.C. v. Jordan Hyden Womble Culbreth & Holzer, P.C. (In re Asarco, L.L.C.),* 751 F.3d 291, 300 (5th Cir. 2014)(citations omitted).

[98] *Asbach v. Kisch (In re Martin)*, No. 19-31260, Adversary 21-3017 (Bankr. W.D. La. Aug 28, 2025)(stating, "The two goals of bankruptcy are oft-stated: '[t]he principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor,' against which the Court must balance the additional goal of ensuring 'the fair and equitable treatment of the creditors of a debtor in bankruptcy.' *Marrama v. Citizens Bank of Mass*., 549 U.S. 365, 367, (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). 'A central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt,' *Grogan v. Garner*, 498 U.S. 279, 286, 287 (1991)(internal quotation marks omitted)."

technical conflict this Court is empowered to set aside for the debtors' best interests pursuant to the totality of circumstances.

WHEREBY, ACCORDINGLY, Patrick A. Sheehan and Sheehan & Ramsey prays this Court will approve professional remuneration requested in his fee applications or, based on the Court's equitable discretion, only minimally reduce remuneration requested and authorize the debtors and/or Chapter 11 Trustee to pay amounts held back from payment under the terms of the Interim Compensation Order, subject to the availability of funds at the discretion of the Chapter 11 Trustee; and further prays for such other relief as my be just and appropriate.

THIS  the 24th day of April, 2026.

Respectfully submitted,

PATRICK A. SHEEHAN AND SHEEHAN & RAMSEY, PLLC


BY: BYRD & WISER

BY: /s/ *Robert Alan Byrd*_____
ROBERT ALAN BYRD, MSB#7651
EMAIL: rab@byrd-wiser.com


## CERTIFICATE OF SERVICE

I, ROBERT ALAN BYRD, Attorney for Patrick A. Sheehan and Sheehan & Ramsey, do hereby certify that I have this date transmitted via Electronic Case Filing, as it appears on this date in the court registered e-filers of MEC and/or via U.S. Mail, postage prepaid, a true and correct copy of the above and foregoing Answer to Plaintiff's Complaint to the following:

This the 24th day of April 2026.

/s/ *Robert Alan Byrd*___
ROBERT ALAN BYRD

**Prepared by:**
*/s/Robert Alan Byrd*
ROBERT ALAN BYRD, MSB#7651
Byrd & Wiser
145 Main Street-39530
P.O. Box 1939
Biloxi, Mississippi 39533
Phone: (228) 432-8123
Fax: (228) 432-7029
EMAIL: rab@byrd-wiser.com